Merriweather v. Commonwealth.

---

CASE 116—PROSECUTION AGAINST FRANK MERRIWEATHER FOR MURDER.— OCTOBER 26.

## Merriweather v. Commonwealth.

APPEAL FROM CHRISTIAN CIRCUIT COURT—THOS. P. COOK, CIRCUIT JUDGE.

DEFENDANT CONVICTED AND APPEALS, REVERSED.

HOMICIDE—OBJECTIONS TO JURY—COLOR—ADMISSIBILITY OF EVIDENCE.

1. Where there is nothing in the record on the trial of a negro for murder showing the race of the jurors, or what race or races the venire included, the refusal of a new trial on the ground that the venire from which the jury was selected were white men was proper.
2. In a separate trial of one of several persons charged with murder, evidence of statements made by the others while in custody, and in the presence of defendant to which he made no response, is not admissible as to defendant's guilt.
    (No brief in the record for appellant.)

N. B. HAYS AND LORAINE MIX, ATTORNEYS FOR APPELLEE.

1. The appellant is charged with conspiring and confederating with other persons, defendants, to kill and murder a man whose

Merriweather v. Commonwealth.

name was unknown to the grand jury, and in pursuance thereof did kill him.

2. The evidence sustains the conspiracy and murder, and we submit that the statement of any one of the conspirators is competent evidence against any one of the others on the trial.

3. Even if the conspiracy is not proved, the statement of any of those who were present and engaged or aiding in the murder, is competent evidence against the one on trial if made in his presence and hearing.

4. The court will not inquire into the credibility of a witness whose testimony is introduced to establish a conspiracy.

5. There is nothing in the record to show any race prejudice or discrimination on the trial. Commonwealth v. Crowinshield, 10 Pick., 497; Spees v. People, 122 Ill., 1; Jenkins v. State, 35 Fla., 737; 1 Greenleaf, 111; Lewis v. Com., 10 Rep., 895; Shelby v. Com., 91 Ky., 563; Hines v. Com., 23 Rep., 119; Porter v. Com., 22 R., 1658; Powers v. Com., 22 R., 1814; Abbott's Trial Brief. p. 478; State v. Johnson, 35 La. Ann., 842.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

Appellant, Frank Merriweather, and eight others, including George Holland and Dick Carney, all negroes, were indicted for the willful murder of an unknown white man committed in Christian county on November 14, 1903. The murdered man was a stranger in that community. He appeared in a saloon in the town of Pembroke after dark on the 14th of November, 1903—Saturday night—and bought some whisky. In paying for it he exhibited some money, and besides got some silver exchanged for paper money, which he added to a roll of bills, also exhibited in the saloon. Dick Carney is shown by the evidence in this case to have seen the occurrence above narrated, and to have followed the stranger out. There were a number of people in and about the saloon at the time, and others went out directly after the stranger. Persons passing through Chilton woods about 1½ miles from Pembroke, some hour or so later, discovered a fire built near a tree, and a man having the appearance of this stranger sitting alone by it. On the following Tuesday

the body of the stranger was found partially hidden beneath a pile of rails near where the fire had been. The body appeared then to have been dead two or three days. Hogs had gotten to it and partially eaten it. The skull had been crushed by a bludgeon or some blunt instrument, the throat had been cut, the penis had been cut off, and the face cut or eaten away. There was also evidence that a great hole had been cut in the abdomen. Near the scene of the murder— for murder it certainly was—there was found an ax handle fitting a double-bitted ax. On this handle was blood and dark hair matching that on the dead body. Blood was spattered on the tree standing near the place where the fire was. There were also blood stains, with a raveling of cloth, on the bark of the tree, where a knife had been cut into the bark, evidently for the purpose of cleaning the blood from it. An old glove fitting the right hand was also found near the scene. The glove was identified as belonging to appellant. On Wednesday appellant was noticed to have blood spots on one leg of his trousers. There was proof that appellant owned a double-bitted ax, which had not been seen since the killing. The murdered man was undoubtedly killed for his money, and the body most horribly mutilated by the murderers, either to conceal its identity or to gratify a barbarous lust. Appellant had money immediately after the date of the killing, and had none immediately before. He had not been at work nor been paid any sum in the meantime. There are other circumstances detailed in the evidence tending to establish appellant's guilt, but which it is not deemed necessary to set forth in the opinion, for it is not the province of this court to determine either the guilt or the innocence of the accused, but to see that, if convicted, it shall be upon a trial conducted in the manner which satisfies the law. Appellant demanded and was granted a separate trial from

those jointly indicted with him.  The verdict of the jury found him guilty, and fixed his punishment at death.

The motion and grounds for a new trial allege the following errors:  (1) That the jury was irregularly formed;  (2) that irrelevant and incompetent evidence was admitted against him;  (3) that the instructions to the jury were erroneous.

1.  Appellant suggested in his motion for new trial filed in the circuit court that the jury, and the venire from which it was selected, were all white men, and that his race was discriminated against in its selection, which he claimed was in violation of his rights under the fourteenth amendment to the Constitution of the United States.  It is sufficient for the purpose of this case to say that there is nothing in the record showing the race of any of the jurors.  Nor is there anything showing what race or races the venire included.  Nor was there objection in the circuit court at the time to the jury.  On the contrary, the record shows that it was accepted by the defendant without objection.

2.  Evidence was admitted to the jury which is claimed to be in the nature of admissions by the defendant.  By a number of witnesses it was proved that directly after appellant's arrest he, in company with several others of those indicted with him, was being taken from Pembroke to Hopkinsville, the county seat.  The eight prisoners were chained to each other, but in two groups of four each.  They were standing in the waiting room at the depot, gathered about the stove.  A number of persons, officers and others, were in the room and without.  A crowd had gathered about the depot, but were in the main kept from the room by a guard placed at the door.  Under these circumstances, some of the spectator's or officers asked several of the prisoners whether they had killed the stranger.  George Holland, and others of them,

answered that they had; that appellant had knocked him in the head with an ax handle, and that another held him, while yet another cut his throat. To these statements appellant made no response. It reasonably appears that he was within hearing distance of those making the statements. Appellant was confined in the jail immediately after his arrest. So were the others. The jailroom opened into a courtroom. Some of the prisoners were taken by officers, including a police judge, into the courtroom into the presence of a number of persons, and questioned as to the occurrence of the killing. The police judge seems to have made a written transcript of one of the prisoner's statements, and had him to swear to it. Appellant and Dick Carney were, during these occurrences, confined in a cell in the jail department, but, because the door between the rooms was open, were probably within hearing of, and could see at least, some of the persons in the courtroom. They were from six to ten feet away from those of the prisoners being questioned in the courtroom. They there stated that appellant was present, and struck the blows with the ax handle. Appellant made no response to these statements. The prisoners who made the statements were not introduced as witnesses against appellant. But their statements made in his presence, and presumably within his hearing, were admitted. He objected, and asked their exclusion, which was overruled.

The general rule is that what another said about the transaction under investigation is not relevant as evidence. It is called hearsay. There are, however, numerous exceptions to that general rule. Sometimes classed among these exceptions is where one recited facts in the hearing of the person to be charged, and he assents to their truthfulness. This is allowed upon the ground that such statements by the assent of the person whom it is sought to bind by them

made them his statements, and is consequently bound by them as admissions, if they be against his interest; for it is thought to be contrary to the habit of men to admit a matter which is against their interest unless constrained to do so by its very truth. This evidence is admitted at last, not because somebody else made the statement, though in the hearing of the person to be charged, but because the latter has expressly or impliedly ratified and adopted it as his own statement. Express admissions against one's interest voluntarily and understandingly made, though oral, are regarded as competent evidence of much force. It must be clear, however, in such case, that the party to be bound did understand the statement in its exact import, and of his volition and purpose adopted it as his own version of the transaction. On this subject Prof. Greenleaf writes (section 200, Greenleaf, Ev.) : "With respect to all verbal admissions, it may be observed that they ought to be received with great caution. The evidence, consisting as it. does in the mere repetition of oral statements, is subject to much imperfection and mistake; the party himself either being misinformed, or not having clearly expressed his own meaning, or the witness having misunderstood him. It frequently happens, also, that the witness, by unintentionally altering a few of the expressions really used, gives an effect to the statement completely at variance with what the party actually did say." Of express admissions, though subject to the criticism, or rather caution, made in the foregoing quotation, it may be said that the party has intentionally given them currency by his own speech, and for whatever purpose they can be properly used. Intimately and necessarily connected with that class of admissions is that where they are implied by the conduct of the party. Among this class are flight, fabrications, and such. There is also included in it that

of admission by silence or acquiescence. Manifestly this last is of much lower degree, and less satisfying than an express admission. For, after all, there must be to some extent an assumption that the person sought to be bound did understand the matter as it was understood by the person making the statement and by the tribunal trying the fact. While this assumption may in some cases amount to almost a certainty, yet in every case it is necessarily an assumption, which, of course, may be contrary to the truth of the matter. The rule deduced from the varying circumstances under which admissions by silence or acquiescence may be inferred is thus stated in Greenleaf on Evidence, section 197: "Acquiescence, to have the effect of an admission, must exhibit some act of the mind, and amount to voluntary demeanor or conduct of the party. And whether it is acquiescence in the conduct or in the language of others, it must plainly appear that such conduct was fully known, or the language fully understood by the party, before any inference can be drawn from his passiveness or silence. The circumstances, too, must be not only such as afforded him an opportunity to act or speak, but such also as would properly and naturally call for some action or reply from men similarly situated." If a statement be made in the presence of one accused, or otherwise sought to be charged with its truthfulness, and he denies it, there can be no sort of doubt that the whole occurrence is incompetent as evidence against the latter. It would be a most dangerous thing to allow evidence to be manufactured in such way, for, if both the statement and the denial were admitted, the jury might elect to discredit the veracity of the accused, while, nothing appearing against that of the person who had made the statement, it would be believed. The result would be to convict or charge one upon what a witness said somebody

else not under oath said of the matter. It needs no elaboration to show that at the common law such evidence is generally not receivable. What another may have said, though in the presence of the accused (not forming a part of the *res gestae*), is immaterial, except it be a fact that the accused, by admitting the statement to be true, made it his statement by adoption. It is at war with every principle of the law of evidence as administered in this country and England to admit it on any other ground. When, therefore, it appears that the accused did not adopt the statement as his own, from whatever cause, it ought not to be admitted at all. It is not material in the analysis of this rule that the statement may in fact be true, or that it can not be otherwise proven. The sole inquiry is, did the person attempted to be bound actually admit it, voluntarily and understandingly? Is it evinced that by an action of his mind he, in effect, likewise declared the fact to be as stated? If not, then the matter is incompetent for any purpose as evidence against him. These may be stated as requisites to the admission of such evidence: (1) Did the person to be bound by the statement hear it? (2) Did he understand it? (3) Did he have an opportunity to express himself concerning it? (4) Was he called upon to act upon or reply to it? If the circumstances attending the statement were such as to show either that he did not, or, from whatever motive probably did not intend to commit himself at all on the subject, then it would be doing violence to the fact, and serving a most unsafe practice, to allow an inference to the contrary to be drawn from his silence. The accused in this instance was in custody, manacled, and being hurried to jail, charged with a heinous crime, justly arousing the indignation of the community. Surrounding him was a crowd of curious people, whose motives for being present

may have been interpreted—not unreasonably, by one so situated as the prisoner was—as inimical to his personal safety. Without an opportunity to consult counsel, beset by fears and misgivings, possibly stricken by a consciousness of guilt, and ignorant of a proper course to pursue, was not the natural thing for him to do to keep silent? No part of the conversation was addressed to him. He was not asked to answer. Nor was he bound to have done so, even if asked, no matter by whom. One can not be compelled, when not offering himself as a witness in his own defense, to give evidence in court tending to incriminate himself. Much less should he be compelled to do so out of court. If silence in such case is evidence of guilt, then one charged with crime must, under penalty of himself creating most damaging evidence against himself in support of the charge, enter into a controversy of words with every idle straggler who may choose to accuse him to his fac. He must parry every cross-examination attempted by every self-appointed questioner. He must, though not addressed, continually shout a denial of every fugitive statement tending to implicate him that may reach his ears. He must hazard answering accurately every statement so made, or have his silence construed as evidence of his having admitted not only what the witness then said, but possibly now says was then said. Courts have been called upon to apply such facts to that part of the rule above quoted, which says that the accused must not only have an opportunity to respond to the statement sought to be fastened upon him as an admission, but that the circumstances must be such as "naturally and properly call for some action or reply from men similarly situated."

One of the earliest and most thoroughly considered cases bearing upon this subject, and one which is a leading case

thereon, is that of Commonwealth v. Kenney, 12 Metc. (Mass.), 235, 46 Am. Dec., 672. The accused in that case was charged with having stolen and carried away a bag of money, the property of one Russell. When the prisoner was brought to the police station, Russell, named in the indictment as having been robbed, came in crying, and said: "That man," pointing to the defendant, "has stolen my money." A bag, which the prisoner had secreted after he was taken to the station house, was found, whereupon Russell immediately said: "That is my bag," and as the money was counted, said: "That is all the money I had in the world." The defendant was present, and heard all these statements, and made no response. Chief Justice Shaw, in delivering the opinion of the court, after stating the rule as announced by Greenleaf above, added: "If [the statements be] made in the course of any judicial hearing, he could not interfere and deny the statement. It would be to charge the witness with perjury, and alike inconsistent with decorum and the rules of law. So, if a matter is of something not within his knowledge; if the statement is made by a stranger, whom he is not called on to notice; or if he is restrained by fear, by doubts of his rights, by a belief that his security will be best promoted by his silence—then no inference or assent can be drawn from his silence." The court added: "The circumstances were such that the court are of opinion that the declaration of the party robbed, to which the defendant made no reply, ought not to have been received as competent evidence of his admission, either of the fact of stealing or that the bag and money were the property of the party alleged to be robbed." The Supreme Court of Alabama, in Bob v. State, 32 Ala., 560, had occasion to consider the same question. The prisoner in that case, who was a slave, was indicted for an assault with intent to kill

Thomas Curtis, a white person. Bob was called into his master's house, in the presence of his master and mistress, with several neighbors who had assembled, when the measure of tracks found at the scene of the shooting was applied to his shoes which he was at that time wearing. On applying the measure it was found that it fitted his shoes in every particular. Several of those present exclaimed that they were the shoes that made the tracks, to which exclamations the prisoner made no reply. The court said: "The implication of admissions from silence rests upon the idea of acquiescence. . . . It never applies unless an acquiescence in what is said can be presumed. Neither reason nor law will permit the presumption of acquiescence to be drawn from silence, unless the circumstances were not only such as afforded the party an opportunity to act or speak, but such also as would properly and naturally call for some action or reply from men similarly situated." (Citing authorities.) Resuming: "The exclamation was not addressed to the accused. It was made by white persons, in the presence of his master and mistress, and in a room of their house. It was rather an emotional expression, demanding no reply. Such an expression, made in such presence, by such persons, and in such a place, did not properly and naturally call for a reply from the accused slave." A comparatively recent work on the law of criminal evidence (Rice on Evidence), treating of the demeanor of the accused when under arrest, and the effect of his silence, says: "What a third person says in the presence of a person charged is admissible against him if he remains silent. His silence must be taken as an acquiescence in its truth." (Citing numerous authorities.) Further: "Still it is a familiar elementary principle that silence, when the accused is under no restraint, and at full liberty to speak, may sometimes be re-

garded as a tacit admission." (Section 318.) What are called "admissions" in civil actions, in criminal law are called "confessions." The terms are synonymous under this rule of evidence. The author last quoted says at the close of section 318: "In closing my observations upon this subject, it may be well to say that all confessions are *prima facie* involuntary and inadmissible. [Citing authorities.] Nor are confessions presumed to have been voluntarily made when the party making them is restrained of his liberty, or is in immediate apprehension of great bodily harm."

The question whether the statement sought to be introduced was voluntarily made, and under such circumstances as to constitute it evidence against the accused, is one primarily for the court (Commonwealth v. Kenney, supra; Hudson v. Commonwealth, 2 Duv., 531), which, if admitted, then becomes matter to be weighed by the jury. In this State it has been twice before held that silence of one accused under such or similar circumstances is not evidence of guilt. Jackson v. Commonwealth, 100 Ky., 239, 18 R., 795, 38 S. W., 422, 1091, 66 Am. St. Rep., 336; Porter v. Commonwealth, 61 S. W., 16, 22 Ky. Law Rep., 1657. Other cases in other jurisdictions which show the law to be as herein stated are Lawson v. State, 20 Ala., 65, 56 Am. Dec., 182; Wilkins v. Stidger, 22 Cal., 231, 83 Am. Dec., 64; Pierce v. Goldsberry, 35 Ind., 317; Whitney v. Houghton, 127 Mass., 527; Com. v. Walker, 13 Allen (Mass.), 570.

3. The instructions as given by the court, except the one bearing on the statements above discussed, and which we hold were improperly admitted, seem to fairly embrace all the law applicable to this case. But for the reasons indicated the judgment of the circuit court must be reversed, and cause remanded for a new trial not inconsistent herewith.