COMMONWEALTH vs. DIONISIOS SPIROPOULOS, alias JAMES MANTIR, & another.

Middlesex.   January 27, 1911. — February 28, 1911.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & RUGG, JJ.

*Evidence*, Opinion: experts, Admissions and confessions.

At the trial of an indictment for the murder of a woman, whose body was found with the throat cut by some sharp instrument, which had passed almost to the spinal column, completely severing the gullet and the jugular vein, where it is an undisputed fact that the deceased was left-handed, witnesses properly qualified as experts may be allowed to testify that the character, depth and direction of the wounds were such that they could not have been self inflicted, this being a subject not so far within the ordinary experience of intelligent jurors that they would not be instructed and aided by the opinion of experts.

At the trial of two defendants, called respectively Peter and James, on an indictment for a murder alleged to have been committed by them jointly, a police detective testified that when the defendants were in a police station the defendant Peter repeated a confession, which he had made previously, that during this confession at different times the defendant James called to Peter to stop, saying, "Stop Peter! You lie! You lie! Peter, stop!", that the defendant Peter, after concluding his confession, rose from his chair and said to the other defendant "Jim, tell the truth, tell the truth. You asked me not to tell, Jim, but I had to, for God's sake Jim tell the truth. You know you cut her throat with a razor. You know her blood was on your hands," that there was a silence of two minutes of everybody in the room, and that then the lieutenant of police in charge of the station said to the defendant James, "What have you got to say to Peter's story now, Jim?" whereupon the defendant James said, "Me no talk, me no talk. I want to see my lawyer, I want to see my lawyer." The defendant James excepted to the admission of this evidence against him. *Held*, that the evidence was admissible against the defendant James as well as against the defendant Peter.

BRALEY, J.   The defendants, who were jointly indicted and tried for the murder of one Annie Mullins, took numerous exceptions to the proceedings, but, Mantir having been convicted in the second degree and Delorey of manslaughter, they prosecute only those relating to the admission in evidence of the opinions of medical experts that from the nature and location of the mortal wounds the deceased did not commit suicide, and to the refusal of the court * to rule that certain statements made by Mantir while under arrest charged with the crime could not be considered by the jury as proof of his guilt.

* The case was tried before *Fox* and *White*, JJ.

We take up the questions in the order of their presentation at the argument. The cause of death was not open to conjecture. When the body was discovered, the throat was found to have been slashed in front with some sharp instrument which passed through almost to the spinal column, completely severing the gullet and jugular vein. It being undisputed that the deceased was left-handed, to rebut any possible inference that the homicide was suicidal, the medical examiners who conducted the autopsy and a physician, who viewed the body and heard their testimony of the details and whose qualifications were unquestioned, having been called by the government, were permitted to testify that from the character, depth and direction of the wounds they could not have been self inflicted. *Commonwealth* v. *Johnson*, 188 Mass. 382, 385, 386. It is generally recognized that in questions involving a knowledge of science and the arts, or where technical qualifications and professional skill are in issue, opinion evidence is admissible, while ordinary events associated with daily life are presumed to be understood by the jury because of their experience, without the assistance of experts. *Flynn* v. *Boston Electric Light Co.* 171 Mass. 395. *Edwards* v. *Worcester*, 172 Mass. 104. *Meehan* v. *Holyoke Street Railway*, 186 Mass. 511. *Wolfe* v. *New Bedford Cordage Co.* 189 Mass. 591. *Whalen* v. *Rosnosky*, 195 Mass. 545. *Doherty* v. *Booth*, 200 Mass. 522. *Walker* v. *Williamson*, 205 Mass. 514. It is, of course, true, that the value of such evidence must differ in degree according to the nature of the inquiry, yet in the department of medicine and surgery such testimony often is of much importance and a wide range of inquiry usually is permitted. The medical experts, from their attainments in anatomy united with the experimental knowledge acquired from study and observation of the effect of blows or wounds upon the human body, were peculiarly well fitted to express an opinion, whether the left hand and arm of the deceased could have been so moved as to have been sufficient in scope and power to have produced a blow causing a wound of the severity and dimensions found on the deceased. The facts upon which their opinion rested seem to have been satisfactorily made out, and the jury were absolutely free to give to this evidence such weight as their judgment approved. We cannot assume that the experience or

knowledge of the jurors as intelligent men versed in ordinary affairs must have been so varied and extensive that they would not be instructed and aided by this testimony, and to its admission no exception lies. *Flaherty* v. *Powers*, 107 Mass. 61, 64. *Commonwealth* v. *Piper*, 120 Mass. 185. *Commonwealth* v. *Sinclair*, 195 Mass. 100. *Commonwealth* v. *Porn*, 195 Mass. 443; *S. C.* 196 Mass. 326. *State* v. *Knight*, 43 Maine, 10, 130. *Taylor* v. *Monroe*, 43 Conn. 36, 44. *State* v. *Lee*, 65 Conn. 265.

The objection to the admission in evidence of what was said by the defendants when confronted at the police station,* which in view of the gravity of the crime the government concedes may be treated as exceptions duly saved, and the exceptions to the refusal to rule in the language requested, that "inasmuch as none of the answers made by the defendant . . . Mantir at the station house . . . had any tendency to show guilt on his part, and as all of his answers were explicit denials of guilt of any and all charges made against him, none of the statements

---

* The following is from the testimony of one Byrnes, a police detective, describing what took place at the North Cambridge police station which was in charge of one Gordon, a lieutenant of police : " Mantir said, 'I never was in Cambridge over night with Peter Delorey. I never was out over night with Peter Delorey. Peter lied, Peter lies ! ' Gordon then said to Mantir: 'I am going to bring Peter Delorey in here and have him tell you the story.' Peter was then brought back into the room, and at that time Gordon said to both Delorey and Mantir, ' Now, Peter, I am going to ask you to tell your story over again in the presence of Mantir and I want to warn both of you that anything that either one of you say or make any statement, it may be used either for or against you at your trial.' Peter says: 'I have told the truth once and I will tell it again '; and Peter then started and related his confession over again in the presence of James Mantir. During that confession at different times James Mantir called on Peter to stop, — ' Stop, Peter! You lie ! You lie! Peter, stop ! ' After Peter got through relating the confession, he and Mantir were sitting opposite each other. He turns around in his chair and gets up. He says, ' Jim, tell the truth, tell the truth. You asked me not to tell, Jim, but I had to, for God's sake Jim tell the truth. You know you cut her throat with a razor. You know her blood was on your hands.' There was a silence of about two minutes of everybody in the room. Gordon then said to James Mantir : ' What have you got to say to Peter Delorey's story now, Jim ? ' Mantir says, ' Me no talk, me no talk. I want to see my lawyer, I want to see my lawyer.' At that time both Peter and James Mantir were taken out and locked in the cell."

made by . . . Delorey in his alleged confession made in his presence, and implicating him the said . . . Mantir are admissible against him," is pressed only by Mantir, as the evidence clearly was admissible against Delorey. If a defendant while under arrest is charged with the crime by an accusation made in his presence and hearing, and he remains mute or unequivocally denies it, his silence or denial is not admissible in evidence against him. But if he makes an equivocal reply, the question or statement by which it was elicited and the answer or comment are admissible. *Commonwealth* v. *Kenney*, 12 Met. 235. *Commonwealth* v. *Walker*, 13 Allen, 570. *Commonwealth* v. *Brown*, 121 Mass. 69, 80. *Commonwealth* v. *McDermott*, 123 Mass. 440. *Commonwealth* v. *Trefethen*, 157 Mass. 180, 197, 198. We place to one side other evidence introduced by the Government, that Mantir's conduct and false statements before his arrest tended to show his connection with the murder. It was said by Chief Justice Field in *Commonwealth* v. *Trefethen*, 157 Mass. 180, 199, " To argue that, by the other evidence, the defendant is shown to be probably guilty, and that therefore his denial of guilt is false, and is additional evidence against him, ought not to be permitted." The distinction is, that before arrest if he remains silent when statements are made to him or questions asked, which naturally call for a reply if he is innocent, proof of his conduct is admissible. But when under arrest he is not called upon to speak, and what he may have said or done while only under suspicion cannot be used as a reason from which to infer that proof of his silence raises a presumption of his guilt. *Commonwealth* v. *Kenney*, 12 Met. 235. *Commonwealth* v. *Galavan*, 9 Allen, 271. *Commonwealth* v. *McDermott*, 123 Mass. 440. *Commonwealth* v. *Coughlin*, 182 Mass. 558, 565. The voluntary statements or replies made by this defendant in the presence of the police officers when confronted with Delorey, who then repeated the confession previously made by him which implicated Mantir as the perpetrator of the murder, were not unequivocal denials, but from the very form of expression were susceptible of more than one consistent interpretation. *Commonwealth* v. *Chance*, 174 Mass. 245, 248, 249. *Commonwealth* v. *Brown*, 121 Mass. 69, 80.

It was correctly left to the jury under well guarded instruc-

tions to decide, whether Mantir's command or request to Delorey to stop the narrative and the accompanying assertions that it was false, were elicited because the statements were true or whether from Mantir's point of view Delorey was lying for his own advantage in accusing him as the instigator of the murder and the person by whose hand it was finally accomplished. *Graham* v. *Middleby*, 185 Mass. 349, 354. The rights of each defendant having been fully preserved, no error of law appears, and their conviction must stand.

*Exceptions overruled.*

*H. H. Winslow*, (*J. A. E. Moroney & F. McDermott* with him,) for the defendants.

*J. J. Higgins*, District Attorney, for the Commonwealth.

