## MANLEY v. STATE OF INDIANA.

[No. 24,960. Filed April 23, 1926.]

1. HOMICIDE.—*Evidence held sufficient to sustain conviction for murder in second degree.*—Evidence *held* sufficient to sustain conviction for murder in the second degree as defined by §2415 Burns 1926, §2238 Burns 1914.  p. 586.

2. HOMICIDE.—*Testimony that accused told policemen who arrested him, in answer to questions in presence of wounded victim, that he shot him and was sorry for it, was not inadmissible merely because accused was under arrest.*—In a prosecution for murder, testimony that the accused told policemen who arrested him, in answer to questions asked in presence of wounded victim, that he had shot the former and was sorry for it, was not inadmissible merely because accused was under arrest; had he remained silent, a different question might be raised.  p. 586.

From Marion Criminal Court (57,906); *James A. Collins,* Judge.

Robert Manley was convicted of murder in the second degree, and he appeals.  *Affirmed.*

*Robinson, Symmes & Melson, Donald F. Lafuze* and *Earl R. Cox,* for appellant.

*Arthur L. Gilliom,* Attorney-General and *George J. Muller,* Deputy Attorney-General, for the State.

EWBANK, C. J.—The indictment on which appellant was tried charged that he unlawfully, feloniously, purposely and maliciously, but without premeditation, killed and murdered Greenwood Pemberton, by then and there unlawfully, feloniously, purposely and maliciously, but without premeditation, shooting him with a loaded revolver, and thereby inflicting a mortal wound, from which he died.  The jury found appellant, "guilty of murder in the second degree as charged in the indictment, and that he be imprisoned in the Indiana State Prison during life."  He filed a motion for a new trial for the reasons, among others, that the verdict is not

sustained by sufficient evidence and is contrary to law, and that certain evidence was improperly admitted. The motion being overruled, he reserved an exception, and has assigned that ruling as error.

Witnesses testified that on the Sunday night before the general election in November, 1924, a number of men and women were at the home of appellant's neighbor, next door, some of them playing the victrola and dancing, some "shooting craps" in a back room, and some, including appellant, engaged in an attempt to hold a political meeting in the front room. That appellant had a "poll book" and another book, and "called six or seven into the front room and started speaking about politics." That another man opposed him and said he would not vote the way appellant was asking them to, and appellant became angry and told him, with a profane oath, that he could measure every inch of his grave. That appellant then went away to another house, but came back in ten or fifteen minutes with a revolver hanging out of his side pocket and his hand in his hip pocket, and said of the man with whom he had before had the argument, that if he "says any more to me I will kill him." That several times afterward, he spoke of "measuring every inch of the grave" of anybody who should oppose him, and when a tall man told him to put his gun down and he would fight with him, appellant pointed his gun toward the tall man and, with an oath, said: "Make another step and every inch of your grave is measured," and repeated these words twice while walking toward the man. And that, in a fight which ensued soon after, appellant shot the deceased. There was also evidence that appellant told the man with whom he was arguing about politics that he would kill him, and "had the revolver like he was trying to get a sight on" that man, and that some persons pushed the man out of the house just before the shot was fired.

That appellant pointed the gun at that man, but a woman let the man out at the kitchen door. That, just before the shooting, appellant had threatened to "kill any son — — that moved." That Pemberton, the man who was killed, had not been fighting, and, at the time when appellant pulled out his gun, was going toward the door, and that appellant shot him through the side. That Pemberton, also, was a tall man, the tallest there. That he was passing by appellant as he stood in the doorway, and appellant "pulled his gun out" and "just shot him." That after the shot was fired everybody ran out of the house, including the wounded man, and just afterward, defendant came out of the house with a gun in his hand. That he came to the corner with a gun in his hand and ran to the middle of the street. That he laughed and said a fellow was shot. That he held the gun in his hand throwing out the shell and "hollered" for somebody to get him a taxi. That he was arrested two days afterward by two policemen who asked him why he shot Greenwood Pemberton, and he answered that he had a political argument. That they asked him what he had done with the gun he shot him with, and appellant said it was at his home and, if they would take him there, he would get it for them. That the first thing he said when he saw the policeman was "You have got me, here I am." That he said he shot Pemberton. That the shot penetrated Pemberton's abdomen, and he died the ninth day after he was shot. There was much further evidence to the same effect, as well as evidence to the contrary, although nobody positively denied that appellant fired the fatal shot, much of the testimony of the defense being to the effect that the whole crowd, including appellant, were drunk, and that the shot was fired during the progress of a drunken fight.

Appellant does not question the sufficiency of this evi-

dence to prove that he shot and killed Pemberton. But
      he insists that it fell short of proving that he
1.  killed Pemberton "purposely and maliciously,"
      and therefore falls short of proving him guilty
of murder in the second degree. But if the jury be-
lieved the witnesses who testified that after repeated
threats to kill different persons and to kill any person
who should dispute what he said or say any more to
him, and after having an altercation with a tall man,
he pulled out his gun and shot another tall man who
was going toward the door, in the manner as the wit-
nesses described it, they had the right to infer that he
did so maliciously, with the purpose and intent to kill
the man he shot at. The verdict is supported by suf-
ficient evidence, and is not contrary to law. §2415
Burns 1926, §2238 Burns 1914, §350, Acts 1905 p. 584.

Although a number of witnesses testified that appel-
lant fired the shot which killed Pemberton, and several
      more testified without objection that he after-
2.  ward said he had shot him, and the fact that he
      did the shooting does not seem to have been seri-
ously disputed, while the fact that Pemberton died of a
gunshot wound inflicted at that time was wholly uncon-
troverted, appellant complains because the court admit-
ted evidence that when appellant was taken into the
presence of Pemberton after being arrested, Pemberton
said he shot him. The testimony complained of was
given by a policeman, who stated that after appellant
was placed under arrest, he was taken where Pember-
ton was lying in bed at the hospital, when "we asked
Pemberton, was this the man who shot him, and he
kind of turned his head and looked up and said 'Yes.'
Lieutenant Hopson asked appellant 'Did you shoot
him?' and he said 'Yes, and I am sorry.' Then he asked
him, Manley, what he shot him for, and he said it was
over a political argument." The fact that appellant

told the policemen, in answer to questions asked in the presence of the wounded man, that he shot Pemberton over a political argument and was sorry for it, immediately after Pemberton had identified him as the man who did the shooting, was not inadmissible merely because appellant was under arrest at the time. If he had remained silent when the accusation was made, a different question might be presented, upon which we express no opinion. *Commonwealth* v. *Spiropoulos* (1911), 208 Mass. 71, 94 N. E. 451.

It may well be doubted whether any question as to the admissibility of this evidence is presented by the record. The question whether the witness had a conversation with Pemberton in the presence of defendant, to which an objection was made, does not appear to have been answered. And the question "detail the conversation which you had with Pemberton in the presence of this defendant," in answer to which, the witness gave the evidence complained of, is not shown to have been objected or excepted to. But even if an objection had been properly made and an exception duly saved, the admission of such evidence is not available as a cause for reversing the judgment, for the reasons stated above.

The judgment is affirmed.