## JARL v. UNITED STATES. *

### MONROE v. SAME.

Circuit Court of Appeals, Eighth Circuit. May 5, 1927.

Nos. 7385, 7386.

1. **Indictment and information ☞71—Indictment for illegal transportation and sale held insufficient for want of particularity.**

An indictment containing counts charging illegal transportation and illegal sale of liquor, which did not state the place of the offenses otherwise than by naming the city, did not allege the places from or to which the transportation was made, nor the vehicle used nor the person to whom the sale was made nor the kind of liquor, otherwise than that it was intoxicating liquor containing more than one-half of 1 per cent. of alcohol by volume and was fit for beverage purposes, *held* bad for want of particularity.

*Rehearing denied August 2, 1927.

2. **Criminal law ☞163—Inhibition against double jeopardy applies to misdemeanors (Const. Amend. 5).**

The protection of Const. Amend. 5, against being twice put in jeopardy applies to misdemeanors as well as felonies.

3. **Indictment and information ☞110(3)—Indictment, though following statute, must differentiate the crime intended to be charged from other like offenses.**

An indictment for a statutory offense, which merely follows the language of the statute, is not good, even if it contains every ingredient of the statutory definition, unless it charges the offense with precision and certainty, and leaves no room for doubt of the exact offense intended to be charged, and unless, also, the record shows with accuracy the exact offense presently charged, as a protection against double jeopardy.

4. **Indictment and information ☞71—Purpose of rule requiring exactness in indictment is to give protection to citizen and public by record.**

The purpose of the rule requiring an indictment to describe the crime charged with particularity and exactness is to give protection to the citizen, and also to the public, by record, and not force either to resort to and rely on the uncertainties of extraneous proof.

5. **Indictment and information ☞121(1)—Failure of indictment to define offense with precision cannot be cured by bill of particulars.**

Bill of particulars cannot be used to cure indictment fatally defective because of lack of precision in charging the offense.

6. **Jury ☞66(1)—Order that petit jury panel be drawn from all counties of division but one held valid.**

Order requiring drawing of panel of petit jurors from all counties in the division of the district excepting one *held* valid.

7. **Criminal law ☞739(1)—Evidence held to require submission of question of entrapment to jury.**

Refusal of the court to submit the question of entrapment to the jury *held* error under the evidence.

8. **Criminal law ☞37—Entrapment, satisfactorily proven, is complete defense.**

Entrapment, if made out by the proof to the satisfaction of the jury, constitutes a complete defense.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Criminal prosecution by the United States against Charles Jarl and Frank H. Monroe. Judgment of conviction, and defendants separately bring error. Reversed as to defendant Jarl and as to defendant Monroe on two counts, and affirmed as to Monroe on the third count.

Eugene D. O'Sullivan, of Omaha, Neb. (William N. Jamieson, Charles J. Southard, and James H. Hanley, all of Omaha, Neb., on the brief), for plaintiffs in error.

George A. Keyser, Asst. U. S. Atty., of Omaha, Neb. (James C. Kinsler, U. S. Atty., and Ambrose C. Epperson and Andrew C. Scott, Asst. U. S. Attys., all of Omaha, Neb., and William J. Froelich, Asst. U. S. Atty., of O'Neill, Neb., on the brief), for the United States.

Before LEWIS and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

LEWIS, Circuit Judge. [1] The plaintiffs in error were tried and convicted of offenses charged against them in three counts of an indictment. They come here on separate writs and each assigns as error the overruling of their demurrer to each count. The charges in counts 1 and 2 are in these words:

First Count: "That on or about the fourteenth day of August, in the year nineteen hundred and twenty-four, in the city of Omaha, county of Douglas, and in the Omaha division of the district of Nebraska, and within the jurisdiction of this court, the defendants, Charles Jarl and Frank H. Monroe, then and there being, did then and there unlawfully, knowingly and wilfully transport certain intoxicating liquor, namely, three five-gallon cans, more or less, of intoxicating liquor, all said intoxicating liquor containing more than one-half of one per cent. of alcohol by volume, and being fit for beverage purposes, without first obtaining a permit from the Commissioner of Internal Revenue of the United States of America so to do; contrary to the form of the statute of the United States of America in such case made and provided, and against the peace and dignity of said United States."

Second Count: "And the grand jurors aforesaid, on their oaths aforesaid, do further present that on or about the fourteenth day of August, in the year nineteen hundred and twenty-four, in the city of Omaha, county of Douglas, in the Omaha division of the district of Nebraska, and within the jurisdiction of this court, the defendants, Charles Jarl and Frank H. Monroe, then and there being, did then and there unlawfully, wilfully and knowingly sell certain intoxicating liquor, namely, three five-gallon cans more or less of intoxicating liquor, all said intoxicating liquor containing more than one-half of one per cent. of alcohol by volume, and being fit for beverage purposes, without first obtaining a permit from the Commissioner of Internal Revenue of the United States of

America so to do; contrary to the form of the statute of said United States of America in such case made and provided, and against the peace and dignity of said United States."

It will be observed that neither count specifies the day and the prosecution would not have been restricted in that respect, if it had, nor the kind of intoxicating liquor, nor the amount, nor the particular places in the city of Omaha. The first count does not name the place from which nor the place to which the transportation was made, nor the purpose therefor, nor how it was made, whether by truck, wagon, street car, automobile, or otherwise, or any other identifying fact; and the second does not name the particular place, the purchaser, nor the price. There are no circumstances stated connected with either transaction which identify and distinguish them from a multitude of other like transactions that might be charged against these parties in the same general or specific terms. If this procedure is to be approved it must be applied to all criminal causes alike. When a trial comes on, if there be procurable evidence of more than one transaction within the terms of the general charge, the District Attorney may select one which the Grand Jury did not intend to find. The reasons for some particularity in charging all criminal offenses are well understood, among them: To identify the charge, so that defendant be not put upon trial, without authority, for an offense other than the one covered by the indictment; to enable the defendant to plead thereto, specially or generally, and if his special plea should be overruled, to intelligently prepare his defense; and to protect him on the record in his constitutional right from being twice put in jeopardy for the same offense. 1 Wharton on Crim. Law (7th and Rev. Ed.) §§ 299–304. And for the purpose of securing these rights the Sixth Amendment requires that defendant be informed of the nature and cause of the accusation. Informed by whom, when and how? By the grand jury through its indictment, mentioned in the preceding amendment, returned into court as a result of its secret inquest. The amendments recognized and gave protection to established principles. An indictment for larceny was not good unless it named the property stolen with some definiteness and its owner, for arson some description of the building to which fire was set, for forgery the instrument forged or to which the forged signature was attached, for obtaining property by false pretenses the owner and the false pretenses resorted to, for obstructing a highway a de-

scription of it and where and how it was obstructed, for murder the circumstances connected with the homicidal act, etc. Thus a defendant was informed of the nature and cause of the accusation, he could plead former jeopardy if he had been or should thereafter be indicted for the same offense, and if he went to trial he was enabled from the charge itself to make his defense. No circumstances are pleaded in connection with either charge in these two counts that protected the defendants in any of these rights. These requirements of a good indictment have been repeatedly stated by the Supreme Court, by this court and other courts. In Armour Packing Co. v. United States, 209 U. S. 56, 83, 28 S. Ct. 428, 436 (52 L. Ed. 681), it is said:

"This court has frequently had occasion to hold that the accused is entitled to know the nature and cause of the accusation against him, and that a charge must be sufficiently definite to enable him to make his defense and avail himself of the record of conviction or acquittal for his protection against further prosecutions."

In Harper v. United States, 170 F. 385, this court quoted with approval from an opinion of the Ninth Circuit as to the required definiteness of an indictment for the purpose of pleading former jeopardy thus:

" * * * And, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction."

Again, in Horn v. United States, 182 F. 721, 728, we said:

"The true test therefore is, not whether the indictment might possibly have been made more certain, but whether it contains every element of the offense intended to be charged *and* sufficiently apprises the accused of what they must be prepared to meet, *and,* in case any other proceedings are taken against them for a similar offense, whether the record shows with accuracy to what extent they may plead a former acquittal or conviction."

This statement of the principle was taken from Cochran & Sayre v. United States, 157 U. S. 286, 290, 15 S. Ct. 628, 39 L. Ed. 704. Mr. Justice Brown wrote the opinion in that case, and thereafter, speaking for the court in Ledbetter v. United States, 170 U. S. 606, 609, 610, 18 S. Ct. 774, 775 (42 L. Ed. 1162), he said:

"We have no disposition to qualify what has already been frequently decided by this court, that where the crime is a statutory one it must be charged with precision and certainty, and every ingredient of which it is composed must be clearly and accurately set forth, and that even in the cases of misdemeanors the indictment must be free from all ambiguity, and leave no doubt in the minds of the accused and the court of the exact offense intended to be charged."

In support of this proposition he cited Evans v. United States, 153 U. S. 584, 14 S. Ct. 934, 38 L. Ed. 830, in which he, again speaking for the court, said:

"Even in the cases of misdemeanors, the indictment must be free from all ambiguity, and leave no doubt in the minds of the accused and the court of the exact offense intended to be charged, not only that the former may know what he is called upon to meet, but that, upon a plea of former acquittal or conviction, the record may show with accuracy the exact offense to which the plea relates."

[2] That protection secured by the Fifth Amendment against being twice put in jeopardy for the same offense, applied to misdemeanors as well as felonies, was adjudged in Ex parte Lange, 18 Wall. 163, 21 L. Ed. 872.

[3, 4] Let us return to the Ledbetter Case: It must be clear from the language quoted, supra, and beyond controversy, that an indictment for a statutory offense which merely follows the language of the statute which defines the crime, is not good, even though it contains every ingredient of the statutory definition, unless it charges the offense with precision and certainty and leaves no room for doubt in the minds of the accused and the court of the exact offense intended to be charged; and unless *also,* on the authorities cited in that case and the others from which we have quoted, the record shows with accuracy the exact offense presently charged, as a protection against double jeopardy—because of a former, or perchance a subsequent charge of the same offense. It is very obvious that the statute which was closely followed by the indictment in the Ledbetter Case, was enough to comply with these requirements, but such statutes are exceptional, as a hasty examination of the sections of the Criminal Code will, we think, demonstrate. It is not necessary that we specify circumstances directly connected with or surrounding the commission of these two offenses that would differentiate them from other like offenses; that was a duty imposed on the grand jury, it should have found them in its charge. As to the second count, if no other fact fixing the charge with certainty and accuracy could be found, the natural,

reasonable and common sense thing to do was to name the purchaser. We do not understand that Congress can place restrictions on the Constitution, by saying what an indictment shall or shall not contain. It is no answer to these requirements to say that a plea of former jeopardy may be shown by parol. The meaning and purpose of the rule established by the authorities is to give protection to the citizen and also the public by record, and not force either to resort to and rely on the uncertainties of extraneous proof. The defendant, unless he waives the right, is entitled to have a record made that will establish his plea.

These questions were ably discussed and ruled upon by this court in Lynch v. United States, 10 F.(2d) 947. The opinions which we have cited and many others were there considered, and we agree with what is there said. We took the pains in that case to point out several statements of fact, which if they, or some of them, had not been omitted, would have made the charge in that case definite and certain. But it is claimed that the majority opinion in the later case of Myers v. United States, 15 F.(2d) 977, overruled the Lynch Case. We do not think so. It did not expressly do so. The Lynch Case was not referred to in that opinion. The last paragraph of the opinion in the Myers Case condemned the loose and careless charge as it was there made, and it was held that the affidavit that accompanied the information on which the prosecution was had and which affidavit was the basis of the charge, might be looked to as an aid to informing defendant of the certainty of the charge. This affidavit set out the name of the person to whom the intoxicating liquor was sold—charged in one count as whisky and in the other as alcohol— and the exact place in Omaha at which the sales were made. The other propositions discussed in that case, contrary to the conclusion in the Lynch Case and contrary to the view which we are now attempting to maintain, were vigorously combatted in a clear and forceful dissent, which we think announced the correct rule by which the sufficiency of a criminal charge must be tested. [5] It is contended that if the first and second counts were not good the defendants had it within their power to cure the defect by requesting a bill of particulars; but that is no remedy for material and substantive omissions from the charge. Whether a bill of particulars shall be furnished in any case, civil or criminal, is within the discretion of the trial court; and grant that the exercise of that discretion is subject to appellate review, it must be obvious that procedure would not afford a defendant the protection vouchsafed to him. In Harrington v. Harrington, 107 Mass. 329, 334, the court, addressing itself to this subject, said:

"The other exceptions taken at the trial cannot be sustained. The refusal of the court to order further specifications is not the subject of exceptions. In all cases, civil and criminal, the question whether bills of particulars or specifications shall be ordered is within the discretion of the presiding judge. Commonwealth v. Giles, 1 Gray [Mass.] 466; Commonwealth v. Wood, 4 Gray [Mass.] 11; · Gardner v. Gardner, 2 Gray [Mass.] 434."

A charge may be good and yet it may be made to appear that in fairness the defendant should be furnished with additional information to prevent surprise, restrict the proof and thus enable him to make reasonable preparation for his defense. It cannot be used to cure an indictment fatally defective. Furthermore, we do not know on what reason, or by what authority a District Attorney can assume to specify the particular offense the grand jury intends to charge, nor do we believe any statement he might make in that respect would be binding as of record on a plea of former jeopardy. He has no power of control or right to change the action of that body. There are cases in which that practice is appropriate, but the indictment must be good on its face; and that procedure cannot be resorted to, with or without the request of defendant, to amend an indictment which is bad because of a lack of precision, certainty and accuracy in charging the offense. This, we think, is the plain meaning of the authorities that·have been cited, whether the offense was known at common law or only statutory and whether it be a felony or only a misdemeanor. The reason and necessity for the rule apply as much to the one as to the other. The roots of the principle are in the common law and we find them imbedded in the Constitution.

The third count charges a conspiracy to violate the National Prohibition Act (Comp. St. § 10138¼ et seq.), and without repeating that charge here we think it sufficient to say it is good, and the demurrer to it was properly overruled.

[6] Error is assigned on the court's order overruling defendants' challenge to the array of petit jurors. There are fifteen counties in the Omaha Division, the entire State of Nebraska composing one district. The City of Omaha is in Douglas County. It contains about 200,000 inhabitants. The other fourteen counties in that division contain·about 172,000 inhabitants. The panel of petit ju-

rors for the term at which this trial was had was drawn from the other fourteen counties by order of the District Judge. That order directed that the clerk and the jury commissioner publicly draw on a day named, at the clerk's office of said court in Omaha, the names of sixty-five persons possessing qualifications as petit jurors for the April Term, 1925, and that the drawing be had "in the manner provided by law *and by the rules of said Court* from the body of said District, to wit: From the Omaha Division of said District of Nebraska, except Douglas County." Later the court made a like order for the drawing of thirty additional jurors for said term. We are not informed what the rule of the District Court was, referred to in these two orders, and we must assume that it provided for the exclusion of some counties from which jurors were to be drawn under certain conditions. So assuming, the order comes within the ruling of this court in Spencer v. United States, 169 F. 562, and was a valid order. This question was also considered by this court in Myers v. United States, 15 F.(2d) 977. See also May v. United States (C. C. A.) 199 F. 53; Ruthenberg v. United States, 245 U. S. 480, 38 S. Ct. 168, 62 L. Ed. 414; United States v. Ayres (D. C.) 46 F. 651.

[7] Defendants requested instruction in different forms on the subject of entrapment, all of which were denied over objection and exception. The court then said this to the jury on that subject, to which exception was saved:

"Now it was the defense here of these men that in fact this transaction, the getting together on their part, which is called a conspiracy, the transporting of the liquor, the delivering of the liquor, and the agreeing on the price for the liquor, that all of those things which would go to make up a crime, were in fact not their acts, not originated by them, not devised or thought of by them, but that they were instigated to do all of these things entirely by government agents, and their claim is that they were entrapped into it; that they were not themselves in a criminal state of mind at all; that they did not themselves have a criminal intent; did not themselves want to or actually intend to violate the law or to transport liquor or to sell liquor or come within the charge of conspiracy. Their claim is that they were entrapped, solely and entirely entrapped, and they have requested the court in an appropriate way to instruct the jury on the subject of entrapment, and have presented that theory and that defense to the court. I have taken their instructions which they have requested in which they set forth their contention as to what the law is and the authorities they rely on, and I have considered them, and as to each of those instructions I have reached a contrary opinion as to the law and have refused to give the instructions. There are four written ones, and then the whole phase of it has been called to the court's attention in a regular and complete way, to the matters they rely upon for the defense. But I am satisfied that under the law, as it is, the facts which they rely upon and the testimony which they have given does not present a defense under the law. I am satisfied that if there is anything in their evidence to show that they are not really guilty men in an intentional way; that they are not men who would sell liquor or transport it if let alone and not instigated to it by government officers; if that is the burden and purport of their testimony, I am satisfied that would go to a mitigation of any penalty that ought to be imposed upon them; but that their own testimony clearly shows, as to Charles Jarl, that when the proposal was made to him to sell liquor at fourteen dollars per gallon he acceded to it; that he formed in his mind a guilty purpose, an unlawful purpose, to do his part to bring about the transporting and selling of that quantity of liquor in order that that price should be obtained; and that as to Frank Monroe, when the proposal was made to him that he transport liquor and participate in the selling of it, that he acquiesced and that in his own mind he formed the guilty purpose of so doing, and that such is the testimony on both sides."

A summary of the testimony on that subject is this: Jarl kept a store in Omaha, he was acquainted with one Smith who had traded some at the store, during several days prior to the transaction named in the third count of the indictment he went to the store two or three times and talked with Jarl, he complained of having had hard luck and asked Jarl if he could get some alcohol for a friend of his who lived at Fremont, it would help him out. Jarl testified that he repeatedly told Smith he could not get any alcohol, that he did not deal in alcohol and was not in that kind of business, that Smith finally brought witness Reynolds to the store and Reynolds said his name was Jim Boise, that he was from Fremont and he would give $14 a gallon for 15 gallons of alcohol. Jarl said "No, I don't deal in alcohol and I won't have anything to do with it." Then Jarl took Smith into the back room and again told him he could not get any alcohol. They came out and Smith kept on insisting. Jarl then said he would call up Monroe and ask him if he

could get it. He talked to Monroe over the phone and told Smith and Reynolds that Monroe said he did not have it but if he could get it he would bring it to the store about 4:30. Reynolds admitted that he was trying to make a case against Jarl at the request of Prohibition Agent Thomas, and it is evident that Smith was engaged by the same agent to work with Reynolds. Reynolds first met Smith at the agent's office. Reynolds and Smith went back to Jarl's store about four o'clock. The agent was with them and two other Prohibition Agents were on the watch near by. In a few minutes Monroe came down the street in an automobile. Jarl pointed him out to Reynolds. Monroe had the alcohol and stopped in front of Jarl's store. Reynolds wanted to bring the alcohol into Jarl's store but the latter objected. Monroe then went down the street a short distance, the three Prohibition Agents were at hand and took charge of the alcohol and Jarl and Monroe were arrested. Reynolds handed to Monroe just before his arrest $210 which had been given to him by one of the agents and which was immediately recovered on Monroe's arrest. Smith did not testify. Jarl said he had not seen him since the transaction above stated. He further said he had no interest in the alcohol or its sale, that what he did was done only on the insistence of Smith as a favor to him, and he had never handled or sold alcohol or done anything to assist in violating the Prohibition Law. The Prohibition Director testified that there had been complaints that Jarl was selling liquor at his store.

[8] Where the evidence on the question of entrapment is in conflict it presents an issue of fact for the jury on proper instructions, and it is not within the province of the court to decide it. If it be made out by the proof to the satisfaction of the jury it constitutes a complete defense to the charge. Butts v. United States (C. C. A.) 273 F. 35, 18 A. L. R. 143; Meek v. United States (C. C. A.) 16 F.(2d) 568. When the evidence of Jarl is considered with the undisputed facts we think the case was clearly one for the jury on the question of entrapment. The court erred in its opinion expressed to the jury that entrapment does not constitute a defense to the charge, but that, even if proven, it goes only in mitigation of punishment. There was no evidence of entrapment as to Monroe. The conspiracy count charges that the unlawful agreement and combination to violate the National Prohibition Act was between Jarl, Monroe "and divers other persons whose names are to the Grand Jurors unknown." Monroe testified that he got the

fifteen gallons of alcohol from one Griffin, whom he knew well and at whose house he was then living, that he told Griffin a party wanted to buy it at $14 a gallon and that Griffin let him take it for the purpose of making the sale. We see no reason why the verdict against Monroe on that count should not stand, even if in the end Jarl should be acquitted. Monroe and Griffin conspired to violate the law.

Other claimed errors are assigned. We think they have no merit.

The judgments will be reversed on all counts as to Jarl and on counts one and two as to Monroe. It will be affirmed on the third count as to Monroe, and as there was one sentence on all counts as to both defendants and the third count is good there is no need to remand for resentence of Monroe. The sentence as imposed on him will be executed. Jarl will be granted a new trial on the third count and the court directed to sustain the demurrer to the first and second counts and discharge both defendants as to those counts.