### YEP v. UNITED STATES.

.No. 1281.

Circuit Court of Appeals, Tenth Circuit.
April 11, 1936.

---

BRATTON, Circuit Judge, dissenting.

For prior opinion, see 81 F.(2d) 637.

Charles J. Moynihan, of Montrose, Colo. (Moynihan, Hughes and Knous, of Montrose, Colo., on the brief), for appellant.

David H. Morris, Asst. U. S. Atty., of Denver, Colo. (Thomas J. Morrissey, U. S. Atty., of Denver, Colo., on the brief), for the United States.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

Since our former opinion was filed herein, 81 F.(2d) 637, Yep has filed a petition for rehearing and the trial court has entered and caused to be certified to this court the following order:

"This matter coming on to be heard upon the second day of April, 1936, upon the petition of the defendant Joe S. Yep, by his attorneys Moynihan, Hughes and Knous, for an order nunc pro tunc as hereafter appears, and it appearing that the court on May 21, 1935, by order directed that the defendant's time for filing of bill of exceptions and assignment of errors be enlarged thirty days additional. And it further appearing that the Clerk of the court by inadvertence or mistake made a minute entry in the Session Minutes as follows: '8051 Moynihan time for filing bill of exceptions extended to July 1, 1935.' And that in reliance thereon the Clerk in the course of his duties, by inadvertence or mistake made a corresponding entry in the journal of the court. And whereas it further appears in said Session Minutes that the Clerk made a further entry on said date as follows: '8051 Moynihan time for filing bill of exceptions extended 30 days,' which was the true order as directed by the court, and which entry should have been made in the journal of the court as the true order of the Court.

"It is therefore ordered nunc pro tunc that the record be amended and corrected to show that on May 21, 1935 the court duly enlarged the time within which the defendant Joe S. Yep could file his bill of exceptions and assignment of errors on appeal for thirty days in addition to the time granted by Rules 9 and 13 of the Rules and Practice and Procedure in Criminal Cases in District Courts of the United States, promulgated by the Supreme Court of the United States on May 7, 1934.

"J. Foster Symes
"District Judge."

Under that order, when holidays and Sundays are excluded (see rule 13, Rules of Practice and Procedure, after plea of guilty, verdict or finding of guilt in Criminal Cases [28 U.S.C.A. following section 723a]), Yep had until July 31, 1935, to procure to be settled and to file in the District Court, a bill of exceptions.

It follows that the bill of exceptions was filed in time and should be considered.

Yep's principal defense was entrapment.

On October 24, 1934, the date the offenses charged in counts 2, 3 and 4 were alleged to have been committed, and for some time prior thereto, Yep owned and operated a tea room known as the Shanghai Café at 1528 Curtis Street, Denver.

On September 24, 1934, Noel, an investigator for the United States, and narcotic agent, Moss, went to Yep's tea room. Moss introduced Noel to Yep as an out of town dealer in narcotics, under the name of Eddie Craxton. Noel told Yep he was going to Albuquerque, New Mexico, and would be in the market for some morphine and requested Yep to write him. Yep said he would see what he could do about getting Noel a connection for morphine.

Thereafter, Manning, supervisor of narcotics at Denver, caused a letter to be written to Yep as from Albuquerque, New Mexico, signed Eddie Craxton and dated October 6, 1934. Manning had one of

his agents mail the letter to Yep from Albuquerque.

Government Exhibit N reads as follows:

"Denver, Colorado, October 10th, 1934.

"Dear Mr. Craxton: Cannot make connections. Will let you know if anything comes up. Your letter was not sealed when it arrived. I will see Joe Thomas about same.

"Yours truly,

"Joe

"Land will be $100.00 an acre—ten acre lot."

The last line of Exhibit N was written in pencil. The other portions of the letter were written on a typewriter. Esther Hauth was employed by Yep at his restaurant for many years. She testified she wrote that portion of Exhibit N which is in pencil at Yep's request, but did not write the typewritten portion, that there was a typewriter at the tea room; and that the typewritten portion of the letter looked like it had been written on that typewriter.

During the testimony of police officer, Finnie, a witness for the United States, the following occurred:

"Yep spoke about having the girl who works in the restaurant write some letters for him. They took him to 1526 or 1528 Curtis Street, his place of business. They saw Esther there.

"Q. Relate the contents of the conversation please? A. We asked Esther if she wrote these letters, that was her signature, and she said yes.

"Mr. Moynihan: We object to that on the ground that she is not a defendant, and that any answers made would not be binding upon the defendant unless there was some assent thereto.

"By the Court:

"Q. Was the defendant present? A. He was there, yes.

"The Court: Do you still—

"Mr. Moynihan: Yes, I do. I don't think it is proper. He is not bound by statements made unless there is some assent made. * * *

"Q. Now Mr. Officer Finnie, was there any conversation between Mr. Yep and Miss Hauth at that time? A. Yes, sir.

"Q. What did Mr. Yep say? A. Mr. Yep told her not to talk. * * *

"Q. What? A. Mr. Yep told her not to do any talking, and I told her to go ahead and tell the truth. * * *

"Q. What did he say to her? A. He told her not to talk.

"Q. Then what did she say, as nearly the exact language as you can give it? A. She said she told him at that time he was doing wrong; he was going to get in trouble. * * *

"Mr. Moynihan: I move to strike out that last answer, because it is not competent testimony.

"The Court: Denied.

"Mr. Moynihan: Exception."

■ At the time of the conversation between Finnie and Esther Hauth, Yep was under arrest.

When one is under arrest or in custody, charged with crime, he is under no duty to make any statement concerning the crime with which he stands charged; and statements tending to implicate him, made in his presence and hearing by others, when he is under arrest or in custody, although not denied by him, are not admissible against him.[1]

Yep testified that Moss wrote the typewritten portion of Exhibit N and signed the name "Joe" to it. Moss had told Yep his name was "Joe Thomas." If Yep were warned by Esther Hauth, it would go to the good faith of his defense of entrapment.

■ Esther Hauth's statements to Officer Finnie were not made under oath, and were not impelled by any circumstances of res gestæ, and Finnie's evidence thereof was hearsay. What she narrated to

---

[1] McCarthy v. U.S. (C.C.A. 6) 25 F. (2d) 298, 299; Hauger v. U. S. (C.C.A. 4) 173 F. 54, 58; Commonwealth v. Spiropoulos, 208 Mass. 71, 94 N.E. 451, 452; Commonwealth v. McDermott, 123 Mass. 440, 25 Am.Rep. 120; People v. Rutigliano, 261 N.Y. 103, 184 N.E. 689, 690; Zeller v. State, 123 OhioSt. 519, 176 N.E. 81; Walker v. State, 37 Ohio App. 540, 175 N.E. 29, 30; Merriweather v. Commonwealth, 118 Ky. 870, 82 S. W. 592, 594–596, 4 Ann.Cas. 1039; State v. Hogan (Mo.Sup.) 252 S.W. 387; State v. Dengel (Mo.Sup.) 248 S.W. 603, 605; Towery v. State, 13 Okl.Cr. 216, 163 P. 331, L.R.A.1917D, 491; Langley v. State, 53 Okl.Cr. 401, 12 P.(2d) 254; Wharton's Criminal Evidence, § 680, p. 1409 (10th Ed.).

Finnie, if true, the government should have proved by her when she appeared as its witness, where her evidence would have been given under the sanctity of an oath and could have been subjected to cross-examination and other tests of its truthfulness.

We think the admission of Finnie's evidence quoted above, was erroneous and prejudicial.

■ The issue of entrapment under the evidence and the principles laid down in Sorrells v. U. S., 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, 86 A.L.R. 249, was one of fact for the jury.

Reversed and remanded with instructions to grant Yep a new trial.

BRATTON, Circuit Judge (dissenting).

It was stated in our former opinion that apart from the procedural question decided, we had examined the bill of exceptions with care, and that, if it were open to consideration, it would fail to present prejudicial error and would disclose substantial evidence to support the verdict. Now that it is before us in a technical sense, I adhere to that position.

I cannot agree that the principal defense to the offenses charged in the second, third, and fourth counts of the indictment was entrapment. It was an unqualified denial of concealment and sale as there charged. Defendant testified without condition or qualification that no such transaction ever occurred. He admitted some connection with the transaction laid in the fifth, sixth, seventh, and eighth counts, but explained it; and he was acquitted on those charges. So our consideration is confined to the charges which were denied in toto. But, where entrapment is properly interposed as a defense, it is a question of fact for the jury. Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, 86 A.L.R. 249; Di Salvo v. United States (C.C.A.) 2 F.(2d) 222, 223; Silk v. United States (C.C.A.) 16 F.(2d) 568; Jarl v. United States (C.C.A.) 19 F.(2d) 891. The instructions are not in the record. It is recited, however, that no exceptions were taken to them. After some deliberation, the jury returned into open court and the following took place:

"Foreman: I might ask this question, Your Honor, in the event of the consideration of entrapment, would decision in favor of the defendant on the point of entrapment be a complete defense?

"The Court: I gave you an instruction this morning on the question of entrapment. I further instruct you that each count was a separate offense. You may consider the question of entrapment as to each count of the indictment and it is within your province to find he was or was not entrapped as to each count, irrespective of your verdict or decision on each of the other counts. The action here, according to the evidence, covered a considerable period of time.

"Mr. Moynihan: As I understood the juror's question was as to whether or not they find in favor of entrapment that means a verdict of not guilty. If they find there was entrapment, are they permitted under your instructions to find a verdict of not guilty?

"The Court: As to any count, they can consider the question of entrapment as to each of the eight counts.

"Mr. Moynihan: What I think the juror wants to know is if they find in favor of entrapment it is a complete defense, which will entitle the defendant to an acquittal.

"The Court: Entrapment is a complete defense, gentlemen, as to any count you may find it occurred. As to some of the counts or all of them, or any one or more of them. Does that answer your question?

"Foreman: Yes, maybe one more. Isn't it possible to bring in a disagreement, or must we come to a direct verdict of guilty or not guilty as to all of these counts?

"The Court: Yes, you can, but I will ask you to deliberate further and attempt to reach a verdict on each and every count, but if after conscientiously trying to reach a verdict, you may return a verdict of guilty or not guilty on any or more of the counts, and report disagreement on the other counts. Anything more?

"Foreman: That's all.

"The Court: You may retire and proceed with your deliberations. * * *"

Manifestly, the question was submitted in clear and unmistakable language; so clear and satisfactory that no word of complaint was made and the jury resolved it against appellant.

Assuming, without deciding, that the testimony of the witness Finnie was inadmissible, it was nonprejudicial. The judgment should be affirmed.