ANDERSON v. STATE.

4108                                    124 S. W. 2d 216

Opinion delivered January 30, 1939.

*Arnold Fink* and *W. R. Donham,* for appellants.

*Jack Holt,* Attorney General, *Jno. P. Streepey,* Asst. Atty. General, for appellee.

MEHAFFY, J.   The appellants, Joe Anderson and Lucille Anderson, were convicted in the Garland circuit court of murder in the first degree, and their punishment fixed at death. To reverse the judgment of the Garland circuit court, this appeal is prosecuted.

The indictment charges that the appellants, with others, entered into a conspiracy to commit the crime of robbery upon one Eldon Cooley by unlawfully, feloniously, forcibly and violently, and against his consent, taking from him his money and personal property, and that in the furtherance of their common, unlawful and felonious design, and while in the pursuance of said unlawful and common purpose and design, and while in the act of perpetrating said robbery upon said Cooley, one of said defendants did unlawfully, willfully and feloniously kill and murder the said Eldon Cooley, etc.

This indictment is under § 2969 of Pope's Digest which provides, among other things, that "willful, deliberate, malicious and premeditated killing, or which shall be committed in the perpetration of or in the attempt to perpetrate, arson, rape, robbery, burglary or larceny, shall be deemed murder in the first degree."

Cooley was a collector employed by Stueart's Grocery Store. The store had several branches and it was the duty and custom of Cooley to go to each of these stores in the afternoon and evening and collect their day's receipts, together with a record of their day's sales. This was done shortly before the stores closed in the evening.

The evidence shows that appellant, Joe Anderson, and others, entered into a conspiracy to rob Cooley after he had made his collection at the last store. In furtherance of this agreement, on September 8, 1938, after Cooley had made his collections, he was held up by appellant, Joe Anderson, and Pug Dickson, and others. They took Cooley in their car, drove into the country, took the

money from Cooley, required him to walk off into the woods and undress, and then shot and killed him because, as some of them said, Cooley recognized one of them.

After the parties were arrested, some of the conspirators made and signed confessions. These confessions were read in evidence against the appellants, and Joe Anderson, the appellant, himself made a confession and, while he claimed that he did not actually kill Cooley, he admitted that he was only a few feet away when Pug Dickson, one of the conspirators, killed Cooley. The evidence shows that they required Cooley to take his clothes off so that he could not go immediately to a telephone, and it also shows that when one of them found that he was recognized by Cooley, Dickson shot him.

Appellants, in their brief, state: "On behalf of Joe Anderson, the sole question presented by this appeal is whether or not the court erred in permitting Marion Anderson, the sheriff of Garland county, to testify concerning the taking of a confession from Alfred 'Pug' Dickson and Bill Johnson, and permitting those confessions to be read to the jury by him and admitted into evidence as exhibits to his testimony, without bringing Alfred 'Pug' Dickson and Bill Johnson into court to testify personally, in view of the fact that both were confined in jail within the jurisdiction of the court, and had not refused to testify."

These confessions were not admissible as the statements of conspirators in the absence of the defendant because they were not made during the pendency of the criminal enterprise and in furtherance of its objects.

"It is thoroughly well established that when a deed is done and the criminal enterprise of the conspirators is ended, the acts or declarations of one conspirator are thereafter inadmissible against his co-conspirator." *Counts* v. *State,* 120 Ark. 462, 179 S. W. 662.

If these confessions, which were introduced in evidence, had been made before the criminal enterprise ended, they would have been admissible although made in the absence of defendant. They could not have been prejudicial in this case because the appellant, Joe Ander-

son, testified and admitted the conspiracy, the robbery and the killing of Cooley. It is true he said that Cooley was shot when he was a few feet away and that he had nothing to do with the shooting, but it was done in furtherance of the conspiracy and all the conspirators were guilty the same as the one that actually did the shooting.

It is well established that this court will not reverse a case for an error where the record conclusively shows that it could not have resulted in any prejudice. As to appellant, Joe Anderson, there could not possibly have been any prejudice because of this evidence, and, since his own testimony shows all the facts recited in the confessions, there was no prejudice as to Joe Anderson.

As to Lucille Anderson, the court told the jury that the confession could only be used against her for the purpose of showing that she heard the statement read and did not deny it.

The authorities are in conflict as to the admissibility of statements of this kind, but practically all agree that the entire circumstances and situation of the parties must be considered. It must, of course, be shown that the person against whom it is sought to be introduced not only heard it but understood it, and that it was made under such circumstances as required her to speak. In the instant case the conspiracy had ended, the robbery had been accomplished, the money distributed, and the parties were in jail. Lucille Anderson was in jail with her husband who doubtless had and exercised some influence over her. Besides that, we think the evidence does not show that she understood the confession, and the circumstances we do not think were such as to require her to speak.

The rule is stated by the Kentucky court as follows: "These may be stated as requisites to the admission of such evidence: (1) Did the person to be bound by the statement hear it? (2) Did he understand it? (3) Did he have an opportunity to express himself concerning it? (4) Was he called upon to act upon or reply to it? If the circumstances attending the statement were such as to show either that he did not, or, from whatever motive, probably did not intend to, commit himself at

all on the subject, then it would be doing violence to the fact, and serving a most unsafe practice, to allow inference to the contrary to be drawn from his silence. The accused in this instance was in custody, manacled, and being hurried to jail, charged with a heinous crime, justly arousing the indignation of the community. Surrounding him was a crowd of curious people, whose motives for being present may have been interpreted—not unreasonably, by one so situated as the prisoner was— as inimicable to his personal safety. Without an opportunity to consult counsel, beset by fears and misgivings, possibly stricken by a consciousness of guilt, and ignorant of a proper course to pursue, was not the natural thing for him to do to keep silent? No part of the conversation was addressed to him. He was not asked to answer. Nor was he bound to have done so, even if asked, no matter by whom. One cannot be compelled, when not offering himself as a witness in his own defense, to give evidence in court tending to incriminate himself. Much less should he be compelled to do so out of court. If silence in such case is evidence of guilt, then one charged with crime must, under penalty of himself creating most damaging evidence against himself in support of the charge, enter into a controversy of words with every idle straggler who may choose to accuse him to his face." *Merriweather* v. *Commonwealth,* 118 Ky. 870, 82 S. W. 592, 4 Ann. Cas. 1039.

"Admissions may also be implied from the acquiescence of the party. But acquiescence, to have the effect of an admission, must exhibit some act of the mind, and amount to voluntary demeanor or conduct of the party. And whether it is acquiescence in the conduct or in the language of others, it must plainly appear that such conduct was fully known, or the language fully understood by the party, before any inference can be drawn from his passiveness or silence. The circumstances, too, must be not only such as afforded him an opportunity to act or to speak, but such also as would properly and naturally call for some action or reply, from men similarly situated." *People* v. *Courtney,* 178 Mich. 137, 144 N. W. 568.

The persons whose confessions were read in evidence were, at the time of the trial, in jail and no reason was given why they were not brought into court to testify where the appellant would have had an opportunity to cross-examine them.

We do not think that the confessions were admissible under the circumstances. There seems to be no evidence that appellant, Lucille Anderson, understood the statement and if she did she would probably have thought that her husband, who was with her, was the proper person to answer if any answer was necessary.

It follows that the judgment against Joe Anderson must be and it is, therefore, affirmed; and the judgment against Lucille Anderson is reversed and the cause remanded for a new trial.