## THE STATE v. WEAVER.

1. **Criminal Law:** CONSPIRACY: THREATS BY ONE JOINTLY INDICTED. Where two persons were jointly indicted for murder, and there was no evidence tending to show a conspiracy between the two, or any accord or concert in feeling and action against the deceased, prior to the conflict resulting in his death, upon the separate trial of one, testimony of threats made by the other four or five months before the homicide, was incompetent.

2. ——: DECLARATIONS OF DECEASED: BELIEF OF IMPENDING DEATH. To render the declarations of the deceased, in regard to the conflict which resulted in his death, competent evidence against the prisoner, it must be shown that they were made in the full belief of impending death.

3. ——: STATEMENTS: FAILURE TO DENY. Where one is under arrest, charged with a crime, his mere silence and failure to deny statements made in his presence tending to criminate him, cannot be interpreted as an admission of the truth of such statements.

4. ——: CO-CONSPIRATOR: DECLARATIONS OF: INCOMPETENT. One conspirator is bound by the declarations and acts of his confederate, but the declarations of a co-conspirator, made after the purposes of the conspiracy have been accomplished, are incompetent to establish the guilt of the accused.

*Appeal from Greene District Court.*

FRIDAY, MARCH 24.

THE defendant was jointly indicted with S. T. Horine for the murder of George W. Learned, and upon a separate trial was convicted of manslaughter. He now appeals to this court. The facts of the case, so far as they are involved in the questions decided, appear in the opinion.

*McDuffie & Howard* and *Russell & Toliver*, for appellant.

*Smith McPherson, Attorney-general*, for the State.

BECK, J.—I. Two witnesses were permitted to testify to threats made by Horine, who is jointly indicted with defend-
1. CRIMINAL ant, against the deceased. These threats were made
law: conspir-
acy: threats. four or five months before the homicide. There is no evidence tending to show that there was any conspiracy on the part of the two defendants against the deceased, or that there was any accord or concert in feelings and action against the deceased, prior to the conflict which resulted in his death. The evidence is clearly incompetent and its admission was prejudicial to defendant.

II. Declarations of the deceased in regard to the conflict which caused his death, made a few hours before he died, were
2. ——: de- admitted in evidence. To render declarations com-
clarations of
deceased: be- petent evidence against the prisoner, the law re-
lief of im-
impending quires that it should appear they were made in
death.
the full belief of the deceased that he would not recover and that his death was impending. The *State v. Nash & Redout*, 7 Iowa, 387. We think the proof intended, under this rule, to establish a foundation for the admission of the declarations of the deceased, is insufficient. It is not made to appear that he believed that he would not recover and that he was near the approach of death. During paroxysms of pain which he suffered, he more than once declared that he could not endure his sufferings and that they would cause his death. An information for the arrest of the defendants was prepared by a justice of the peace to which the deceased was sworn. The justice testifies that at the time, referring to the information, he used this language: "Before God, not expecting to live until night, every word is true." Other witnesses who were present state his declaration in this form: "Not knowing that I may live till night, every word of it is true." After

this declaration his physician gave him encouragement that he would recover. At the time he made the particular declarations, admitted in evidence, it is not shown that he expressed the belief that he would not survive, and there is no ground for presuming that he entertained such belief. The declarations, we think, ought not to have been admitted in evidence, as preliminary proof does not sufficiently show that they were made in the full belief of his impending death.

III. The court directed the jury that "if you are satisfied by the evidence that Horine, in defendant's presence and hearing, did make statements concerning the transac-

3. —— : statements : failure to deny. tions which tended to criminate him, and that defendant made no denial or explanation of the statements, you should consider them in determining the circumstances of the transaction, giving them such weight and importance as you think them fairly entitled to." Certain statements to which this instruction is applicable were made after the arrest of defendant and while he was in the custody of the officers. Under these circumstances his silence and failure to deny statements against him cannot be interpreted as an admission of their truth. *Commonwealth v. Kenney*, 12 Met., 235; *Commonwealth v. Walker et. al.*, 13 Allen, 570; *Cowmonwealth v. McDermott et al.*, 123 Mass., 440.

IV. Evidence was admitted showing the declaration of Horine after defendant's arrest, and not in his presence, in re-

4. —— : conspirator : declarations of : incompetent. gard to the conflict, and that certain articles were found at Horine's house marked with blood. The evidence ought not to have been admitted. One conspirator is bound by the declaration and acts of his confederate, and in no other case are acts and declarations of another competent to establish the guilt of an accused. But in this case, if there had been a conspiracy against deceased, its purposes had been accomplished and the conspiracy was at an end.

The evidence was therefore incompetent. This conclusion is

based upon familiar elementary principles of the law and sound reason.

It is our opinion that, for errors pointed out, the judgment of the District Court ought to be

REVERSED.