WILLIAM VAUGHAN v. STATE.

No. A-789.    Opinion Filed December 22, 1911.

EVIDENCE—Admissibility—Statements of Other Persons in Presence of Accused—Silence. It is error in the trial of a criminal case for the court to admit testimony as to declarations between an officer who had accused under arrest and the state's witnesses, or other persons, in the presence of the accused, tending to connect him with the offense charged, and that the accused remained silent as to such conversation; and when a conviction results with such testimony before the jury a new trial should be granted.

(Syllabus by the Court.)

*Appeal from District Court, Pottawatomie County;*
*Roy Hoffman, Judge.*

William Vaughan was convicted of murder, and appeals. Reversed.

*Blakeney & Maxey*, for plaintiff in error.

*Smith C. Matson,* Asst. Atty. Gen., for the State.

ARMSTRONG, J.    William Vaughan was convicted at the November, 1909, term of the district court of Pottawatomie county. He was charged under the name of William Canalis, together with Irene McKinney, with having murdered Victoria Page in September of the same year. At the regular term of the court in January, 1910, this case was set for the 7th day of the following March. When it was called for trial the defendants named in the indictment elected to be tried separately, and the

cause was tried as to Vaughan, resulting in his conviction on the 9th day of March, thereafter. He was subsequently sentenced by the court to life imprisonment in the state penitentiary in accordance with the verdict.

The proof shows that Mrs. Page, the deceased, and her daughter, Irene McKinney, with some other children, were picking cotton on a farm belonging to Mrs. Shawnee, the mother of the accused, in September, 1909. That they had been in the community only a few days, and the accused had known them only since they had come to his mother's farm. On the morning of the 12th of September the accused, Mrs. Page, and Irene McKinney walked from the Shawnee farm a distance of about two miles to the city of Shawnee, and spent the day there. They left the city of Shawnee for Benson park, which is situated about two or three miles south of Shawnee, about 8 o'clock in the evening. This park appears to be east from the Shawnee farm where the parties lived. After arriving at the park a man named Winfred Shifflet was introduced to Mrs. Page, and the party wandered around the park until about 10 o'clock, when they started home. It appears that there was a public road about two hundred yards south of the park leading to the home of the parties, and that there was a trail from the southwest corner of the park to this road. The accused appears to have spent the entire evening with Irene McKinney, and when they started home Shifflet was with Mrs. Page, and the accused and Irene McKinney were ahead of them going along this trail to the road leading home. The parties had crossed the fence and walked probably forty or fifty yards when a shot was fired which killed Mrs. Page. At this place a brush top lay across the trail, and the accused and Irene McKinney were on one side of this brush top, and the deceased and Shifflet on the other. The evidence conflicts some as to just what happened after the persons named had crossed the park fence. The accused contended that he heard Shifflet say that he could not go any farther than the fence, and that he and Irene McKinney walked on thinking Shifflet was telling Mrs. Page goodbye; that when they had gotten a distance of about thirty-five

steps they passed around the brush top, and had gone about fifteen steps farther when the shot was fired; that he did not fire the shot, and believed that it came from the direction of the park fence; that a man ran by him and Irene McKinney, and that they ran to the fence; that after getting to the fence the girl called to her mother two or three times but she did not answer, and they went back to the brush top and found that she had been killed. The state contended that the accused and Irene McKinney crossed the fence; that Shifflet got on the fence and assisted Mrs. Page over, and that they stopped at the brush top; that while there a man passed by and Shifflet looked up and saw it was not the defendant; that the steps went on down the path, and in a short space of time a shot was fired; that the witness, Shifflet, ran around the brush top and passed near the accused and Irene McKinney, who were about thirty steps away and running also. Later on the accused and the McKinney girl went to the night watchman of the park and inquired about a car for Shawnee. The night watchman informed them it was due in a short time. The girl began to cry and told him that somebody had killed her mother. Officers at Shawnee were notified and they went to the park and arrested the accused and Irene McKinney and carried them to town. The next day Sheriff Pierce went over to Shawnee from Tecumseh and had a talk with Irene McKinney and secured a statement from her to the effect that the accused had done the shooting, saying that he slipped up to the brush pile, fired the shot, threw the gun in a nearby creek, and ran off; and that afterwards they came back and found that he had killed Mrs. Page. She was then taken into the presence of the accused by the officer and asked to re-state what she had stated to the sheriff. She refused to do so, and said the defendant was not guilty and that she would not make any such statement. The officer repeated the conversation in the presence of the defendant, and she denied it and said it was a story. The accused neither denied nor affirmed the statement. The testimony relative to these statements was introduced over the objection and exception of the accused.

The case was submitted, and after the jury had been out about a day they returned into court and said they could not agree as to what the evidence was, and asked that the evidence of the officer who made the arrest be read, which was done, including the statements made by Irene McKinney to the sheriff. Counsel for the accused renewed the objections to the statements, and asked that they be stricken, which was overruled. Several hours later the court recalled the jury and had other evidence read to them. At this time the accused requested the court to instruct the jury that they must consider the evidence read with all the other evidence in the case. This the court abruptly refused to do, ordered counsel to sit down, and censured them for making the request. The request was proper and the court should have so instructed the jury.

A great many exceptions were taken both as to the admission of evidence and the instructions of the court, and are urged here by proper assignments of error; but the only question we deem it necessary to consider is the question of the admissibility of the declarations made by the officers in the presence of the defendant while he was in custody.

Counsel for the accused contend that the defendant was not required to deny anything or any statements made in his presence by any one while he was under arrest and confined in prison. The contention is correct. This proposition is raised by the testimony of the officers quoted *supra*. In the case of *Gardner v. State,* 34 S. W. 945, the Court of Criminal Appeals of Texas lays down the rule in the following language:

"Were these facts, and especially the silence of appellant, competent evidence? They were not. In *Com. v. McDermott,* 123 Mass. 440, it is held: 'A person who is held in custody on a charge of crime is not called upon to contradict statements prejudicial to him, made in his presence by another person in answer to his inquiries made by an officer; and such statements, though not contradicted by him, are not admissible in evidence against him.' This case cites *Com. v. Kenney,* 12 Metc. (Mass.) 235; *Com. v. Walker,* 13 Allen, 12. To give silence the effect of an admission, the party charged with it must have been in a

position to explain. If the party is under arrest, his silence cannot be used as sustaining the hypothesis of acquiescence thereto."

The court then cites a number of cases, and says:

"We deem these authorities sufficient to support the rule that, if the party is under arrest, silence cannot be used to support the hypothesis of consent to statements made in his presence by others."

See *Simmons v. State,* 50 Tex. Cr. 527, 97 S. W. 1052; *Merriweather v. Commonwealth,* 118 Ky. 870, 82 S. W. 592; *State v. Eppstein,* 25 R. I. 132, 55 Atl. 204; *State v. Weaver,* 57 Ia. 730; *State v. Carter,* 106 La. 407; *State v. Howard,* 102 Mo. 142.

There are other errors complained of, most of which involve the competency of testimony. There is hardly sufficient competent testimony in this record to justify an examining magistrate in holding the accused for trial, much less to warrant a conviction for murder.

Let the judgment be reversed and the cause remanded, with directions to grant a new trial.

FURMAN, P. J., and DOYLE, J., concur.