## WILL TOWERY v. STATE.

No. A-2860.   Opinion Filed March 10, 1917.

(163 Pac. 331.)

**EVIDENCE—Admission by Silence—Constitutional Provisions.** Where a party charged with the commission of a crime is under arrest, and a third party, in his presence, makes a statement to the officers, which tends to connect the accused with the commission of the crime, and the accused remains silent. such statement, and the fact that the accused remained silent. is not admissible in evidence against him, for the Constitution clothes the accused with the right of silence, and it would be absurd to say in one breath he has the right of silence, and in the next to hold that he could be forced to testify against himself, by the very act of exercising this right.

*Error from District Court, McIntosh County;*
*T. P. Clay, Assigned Judge.*

Will Towery was convicted of murder, and he brings error.   Reversed and remanded.

*W. H. Twine,* and *J. D. Epps,* for plaintiff in error.
*R. McMillan,* Asst. Atty. Gen., for the State.

BRETT, J.   In this case the plaintiff in error, Will Towery, who will be referred to as defendant, was convicted in the district court of McIntosh county of murder, and sentenced to death. The facts in this case present an unfortunate condition from several angles, and in the trial of the case we think reversible error was committed.

The deceased, Charles Vaughn, was a white man, apparently past middle life, and on August 4, 1916, the

day of the homicide, he seems to have met the defendant and his brother, Cecil Towery, at the resort of a negro woman, where they were all carousing and drinking Choctaw beer. Later he took them and two other young negro men in his automobile and went to Grayson, to a negro picnic, where he and some of his young negro companions indulged in further dissipation. He and three of these young negroes then returned to another place in the community of questionable reputation, and while there the deceased accused the defendant and his brother, Cecil, of having stolen a quart of whisky from him. They each denied the accusation, but he took all three of these young negroes in his car and started with them to Grayson, stating that he intended to have them arrested. They had gone but a short distance from this last resort when the defendant's brother, Cecil Towery, who was sitting on the back seat, struck the deceased with his fist, and said, "I will run this durn car." Classie Scott, a cousin of the defendant and his brother, Cecil, who was sitting with Cecil in the back seat, tried to prevent Cecil from further violence, but Cecil shoved him aside and said, "To hell with you." And as soon as the car was stopped, Scott jumped out and ran for help; but, when he and the party he had summoned returned, Vaughn was in a sitting posture between the seats with his head almost severed from his body, and the defendant and his brother, Cecil, had fled. The pockets of deceased were wrong side out, and the top of the automobile had been pulled down and partially covered the dead man.

Cecil was arrested that afternoon near the scene, in a drunken and crazed condition, and lodged in the jail at Tulsa. The defendant a day or two later appeared at the jail in Tulsa, and voluntarily surrendered. At the

time Classie Scott left, the defendant, who was in the front seat with deceased, appeared to be in the act of getting out of the car. No one saw what was done after Scott left the car; but Cecil pleaded guilty to murder, and testified in behalf of the defendant, exonerating him of all blame, and testified that the defendant did all he could to prevent him from killing the deceased. On his plea of guilty he was sentenced to death, and has been executed; and the only evidence, outside of the fact that the defendant was present and fled, that tended to show that he participated in the crime was a statement of an officer to the effect that, while they were both in jail together and surrounded by a number of officers, Cecil told him, in the defendant's presence, that the defendant gave him an open knife with which he cut the deceased's throat, and the defendant remained silent. Another officer testified that defendant stated on a different occasion that it was his knife that Cecil used, but witness did not intimate that defendant stated that he gave Cecil the knife at the time of the homicide, or for the purpose of using it on the deceased.

It cannot be argued that the defendant's mere presence is sufficient to base a conviction upon; for if Scott, upon whom no suspicion rests, and who in a way did what he could to prevent a tragedy, had remained upon the scene, and unsuccessfully continued his efforts to prevent a tragedy, he doubtless would have been implicated in this murder, and might have found it as difficult to extricate himself as does this defendant. And the testimony of this officer concerning Cecil's statement to him, and that the defendant remained silent, was clearly incompetent, and most prejudicial, and should not have been admitted in evidence, and was doubtless one of the

main factors in influencing the jury to return this ver-
dict. In *Vaughan v. State,* 7 Okla. Cr. 685, 127 Pac.
264, 42 L. R. A. (N. S.) 889, this court, in passing upon
the identical question now under consideration, said:

"It is error in the trial of a criminal case for the
court to admit testimony as to declarations between an
officer who had accused under arrest and the state's wit-
nesses, or other persons, in the presence of the accused,
tending to connect him with the offense charged, and
that the accused remained silent as to such conversation,
and when a conviction results with such testimony be-
fore the jury a new trial should be granted "

—and quoted with approval from the Court of Criminal
Appeals of Texas in *Gardner v. State* [Tex. Cr. App.]
34 S. W. 945, as follows:

"Were these facts, and especially the silence of ap-
pellant, competent evidence? They were not. In *Com. v.
McDermott,* 123 Mass. 440 [25 Am. Rep. 120], it is held:
'A person who is held in custody on a charge of crime is
not called upon to contradict statements, prejudicial to
him, made in his presence by another person in answer
to inquiries made by an officer; and such statements,
though not contradicted by him, are not admissible in
evidence against him.' This case cites *Com. v. Kenney,*
12 Metc. (Mass.) 235 [46 Am. Dec. 672] ; *Com. v. Walker,*
13 Allen [Mass.] 570. To give silence the effect of an
admission, the party charged with it must have been in
a position to explain. If the party is under arrest, his
silence cannot be used as sustaining the hypothesis of
acquiescence thereto. * * * We deem these authori-
ties sufficient to support the rule that, if the party is un-
der arrest, silence cannot be used to support the hypothe-
sis of consent to statements made in his presence by
others."

See *Simmons v. State,* 50 Tex. Cr. 527, 97 S. W.
1052; *Merriweather v. Commonwealth,* 118 Ky. 870, 82

S. W. 592, 4 Ann. Cas. 1039; *State v. Epstein*, 25 R. I. 132, 55 Atl. 204; *State v. Weaver*, 57 Iowa, 730, 11 N. W. 675; *State v. Carter*, 106 La. 407, 30 South. 895; *State v. Howard*, 102 Mo. 142, 14 S. W. 937.

And in *Ellis v. State*, 8 Okla. Cr. 522, 128 Pac. 1095, 43 L. R. A. (N. S.) 811, in an opinion by the late Judge Furman, it is held:

"A person held in custody on a charge of crime is not called upon to contradict statements prejudicial to him, made in his presence by another; and, though such statements were not contradicted by such person, they are not admissible in evidence against him."

And Judge Furman further says:

"Wharton on Criminal Evidence, sec. 680, lays down the rule as follows: 'To give silence, however, effect as an admission, the party charged with it must have been in a position to explain. Before acquiescence in the language of others can be used or assumed as a confession of the truth of any particular statement or the existence of any particular fact, it must plainly appear that the language was heard and the conduct understood. . Thus neither a person asleep nor when intoxicated, or a deaf person, can be in this way prejudiced by statements made in his presence, * * * nor can silence when a party is under arrest.' "

This doctrine is established in this jurisdiction; and under it, we think, the record shows the defendant was deprived of a substantial and material right, his constitutional right of silence, for it would be absurd to say in one breath he has the right of silence, and in the next to hold that he could be forced to testify against himself by the very act of exercising this right.

The judgment is reversed, and the cause is remanded.

DOYLE, P. J., and ARMSTRONG, J., concur.