RAY ROBINSON v. STATE.

No. A-9520. July 28, 1939.
(92 P. 2d 1082.)

L. E. Roseboom, of Enid, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

DAVENPORT, J. The defendant, Ray Robinson, was by information, filed in the district court of Garfield county, Okla., charged with burglary by breaking and entering a certain building, located on the St. Louis & San Francisco Railway right of way in the town of Imo, Okla., occupied by and in possession of the Farmers Co-operative Elevator Company, a corporation; was tried, convicted, and sentenced to be imprisoned in the state penitentiary for a term of five years; from which judgment and sentence, the defendant has appealed.

H. H. Peerboom, testifying on behalf of the state, in substance, stated:

"I live at Enid. On the 27th day of July, 1937, I was manager of the Farmers Elevator at Imo, in Garfield county, Okla. On the 26th day of July, I made an inventory and checked up all the stock on hand for insurance purposes. On the morning of the 30th of July, 1937, I discovered six sacks of bran, six sacks of Sweet feed, four sacks of corn chops, two sacks of cottonseed meal, one sack of Sudan seed, one sack of kaffir corn, one sack of shorts, and three small sacks of oats were missing. They are worth about $40 or $45. The bran was worth $1.25 per hundred. After considerable investigation, I found that a small trap door on the east side of the warehouse had been broken open. I called the officers, made certain inquiries, investigated, and located six sacks of bran at Mrs. McOscar's. I identified it as the same type and kind of bran that I had lost."

Herb Walker, testifying for the state, in substance stated:

"I live at 430 South Arthur, running a restaurant at 108 East Main street, Enid, known as Herb's Coffee Shop. I was operating that restaurant last year. About the middle of July this defendant, Ray Robinson, came and asked me if I wanted to buy some feed. I advised him that I was

not interested, but that Mrs. McOscar would probably buy it. I got them together, and they talked in my restaurant about the feed."

Mrs. D. A. McOscar, testifying for the state, stated:

"I live on a farm with my husband, and raise hogs, chickens, turkeys, horses, cows, and calves. We gather garbage and buy considerable feed stuff. Herb Walker told me that Ray Robinson had some feed to sell. I went out and inquired the price of bran per hundred, and found it was worth $1.25. I came back to the coffee shop and saw Ray Robinson; and he told me he would sell this bran for $1 per hundred. I told him I would take it. I talked to Ray Robinson; but the rest of them were present. I know Buddy Husted. I bought on the strength of Husted working at the elevator, and these boys working for Mr. Garber. I also advised him about what time I would be at home that afternoon. This was on the 27th day of July, 1937. Shortly after I got home, Ray Robinson and two other boys came with six sacks of bran. I had them put it in the feed house, and paid Ray $6 for it. Later Mr. Peerboom and the deputy sheriff came out, and they took the sacks and feed. I know Buddy Husted; he had worked at the elevator during the summer."

D. A. McOscar, testifying for the state, stated in substance:

"I had a little stock farm a mile west of the waterworks and a half mile north from Enid. We bought considerable feed. The parties came by where I was talking to Mr. Dodd about buying an automobile. After awhile I went on to the house, and saw the feed in the feedhouse that my wife had bought from the boys. Jim O'Brate and Mr. Peerboom came out, and Mr. Peerboom identified the bran as the sacks that had been taken from his elevator."

M. Dodd stated that:

"I was talking to Mr. McOscar on the highway leading to his house about selling him a car. I noticed a car come up the road. It looked to be a 1929 or 1930 model Chevrolet. There was more than one person in the car, but I don't know how many. They were all men or boys. They went up to Mr. McOscar's house, and were gone about 20 minutes, and came back."

Elon Denny, an accomplice of the defendant, the next witness on behalf of the state, stated:

"I am well acquainted with Ray Robinson and E. D. Husted. I have known Ray Robinson five or six years, and knew him prior to the 26th day of July, for about a month. I live in Enid. Prior to that time I lived in Kansas. I have been in trouble in Kansas; sentenced to the pen on a charge of rape, and paroled when I was 17 years old. I am now 21. On the 26th day of July, 1937, I met Ray Robinson on the east side of the square, and had a conversation with him. We later met at the coffee shop. We went to the elevator at Imo intending to get some wheat, but found a padlock on the elevator. We traveled in Ray Robinson's 1930 model Chevrolet sedan. When we couldn't get in the elevator, we went to the east side, and inspected the trap door. We each tried it, and finally Ray Robinson opened it, and we went in, Ray, Buddy Husted, and myself. We took six sacks of bran, three sacks of oats, and one sack of Sudan seed, and put it in the car. This was about 2 or 2:30 in the morning. We hid it under a culvert; came into town, and stayed until about 8 o'clock; and slept in the car out on Locust. About 8 o'clock we came to Herb's Coffee Shop. Ray said he would find somebody to buy it. He talked to Herb, and then to Mrs. McOscar; and later we delivered the feed; took six sacks of bran and one sack of oats to Mrs. McOscar's. While in jail I had some conversation with Ray; and Ray did not want me to testify against him. He told Buddy Husted and I, if we would go on down there, he would see that we got money and smoking tobacco. He was supposed to give us a dollar if we would take the fall. I said I would not do it. The rest of the feed that wasn't taken to Mrs. McOscar's was taken by me and Buddy Husted to Mrs. Leisure's."

On cross-examination the witness admitted a conviction of a felony in Kansas, and stated he was paroled. He had been charged with other things, but was not found guilty. "Buddy Husted and I had been in jail three days before Ray Robinson was arrested."

Jim O'Brate, testifying for the state, stated:

"I am deputy sheriff, and investigated the burglary of the Imo on July 30th. I found that there was some feed

gone, and discovered where they entered the building. I accompanied Mr. Peerboom to Mrs. McOscar's, and saw the feed out there. Mr. Peerboom identified the property as being his."

May Leisure, testifying for the defendant, stated:

"I live at 3030 East Maple, Enid, Okla. I knew a boy by the name of Buddy Husted; I had known him a short time. Buddy Husted and Elon Denny made a trip out to our place. I thought the car they were driving was a maroon color, sort of a clean looking car. They offered to sell me some feed. I bought some and paid a reasonable market price for it. They asked to leave some part of at my place; said they wanted to sell some of it to get some money to go to Colorado the next morning."

On cross-examination she said she could not say for sure about the car.

The defendant, testifying in his own behalf, admitted he had been convicted of a felony when he was 19 years old, and that he was now 23.

"I was committed for the crime of burglary. I did not have anything to do with going to the Imo elevator; nor did I open the trap door, and assist in taking the stuff out. I had known Buddy Husted and Elon Denny about two years. I was in Enid on the 27th of July. I heard Elon Denny testify, and that was not so. On the 27th of July I assisted Buddy Husted and Elon Denny in selling six sacks of bran to Mrs. McOscar. About nine o'clock in the morning I saw Buddy and Elon, and talked with them; and they wanted to know if I knew any one who would buy some bran. We went to the coffee shop, and I asked Herb if he wanted to buy any bran; and told him that Buddy Husted had six sacks he wanted to sell. Herb said he knew a lady who might be interested. When she came in Herb told her about it. She said she would take the bran, and would be at home about noon or a little after. Buddy Husted asked me to go home and get my mother's car; and I went out there for him. The car had a piece broken in the fuel pump; and I had to walk to town and back—out to my mother's. Elon Denny, Buddy, and myself walked out there and asked my mother if we could use the car. My mother said it was out of fix. I told her they wanted to get a car to haul some

bran. She asked what I was going to get out of it, and I said $1. Buddy Husted, Elon Denny, and I hauled the bran out to Mrs. McOscar's. The money was paid to me. I then drove to the east corner of the square, and let them out, and went on towards home."

On cross-examination the defendant stated:

"I had known Husted two years. I had not heard of his reputation until he was in jail. I understood that Husted had brought the bran home. I understood that the reason that he got it was that it was damaged a little. The feed was in Husted's father's garage. Husted's daddy worked at an elevator as night watchman. All I know about it was that Buddy told me his daddy got it out there. I didn't suppose he stole it. I didn't hunt up the sheriff and have him investigate it. I did not go to Pauls Valley in 1929. In May, 1933, I was sentenced to the county jail for petit larceny. I did not have the conversation testified to by Elon Denny in the jail. I did not have any conversation with Husted. I did not have any trouble with any one while in jail. I did not know that Husted and Denny were engaged in the burglarizing business. I work a few days once in a while, and can get money from my mother and father any time."

Dorothy Cass stated that she knew the defendant. She had been working in the Shamrock Cafe until it closed.

"I have known Ray Robinson for a year and a half, and have been keeping company with him. I had been with him every night most of the time prior to the alleged robbery."

Her testimony was an effort to establish an alibi.

Mrs. Jap Robinson stated:

"I am Ray Robinson's mother. When he got into this trouble he was staying at home. He usually slept out-of-doors in the yard, and when he got in jail we called up to find out what they had him in for. We have a Chevrolet automobile and another car out there that Mr. Robinson used in his work, one of them an old model, not very good. On the 27th of July, 1937, Ray got permission to use my car. Buddy Husted and Elon Denny came out with Ray. The boys said they wanted him to get the car and haul some stuff they had to sell. They fixed the car. They came

out sometime in the afternoon. We did not have a two car garage, but kept both cars out at the house."

Jap Robinson testified for the defendant:

"I am Roy Robinson's father. We had two cars out at my place in July. I used one in my work, and one was for the family use. One was a tudor sedan, and the other was a coup, both Chevrolets. The sedan had been painted black. The other was blue with a red stripe. I met Dorothy Cass at my house. On the night of July 27th, 1937, my car was not taken away from the place and gone until morning. I left the car between 6:30 and 7:00 where I had parked it, and if it had been gone I would have known it."

The foregoing is the substance of the testimony.

The defendant has assigned eleven errors alleged to have been committed by the trial court, and has presented a written argument in support of the same; but has not cited any authorities in his brief to sustain his contentions.

The only assignment that is necessary for this court to consider is his assignment 9 that:

"The state depended solely on testimony of an accomplice, Elon Denny; and the testimony of said accomplice, Elon Denny, was uncorroborated."

Before a conviction can be sustained upon the testimony of an accomplice, it is necessary that there be other testimony, either positive or circumstantial, connecting the defendant with the crime charged.

In Bradley v. State, 18 Okla. Cr. 503, 196 P. 730, in the third paragraph of the syllabus this court said:

"Defendant's recent possession of property shown to have been stolen at the same time and from the same place of the alleged burglary is a circumstance which the jury may weigh and consider in connection with all the other facts and circumstances in the case."

In Yeargin v. State, 54 Okla. Cr. 34, 14 P. 2d 431, this court in the first syllabus said:

"Where an accused person is found in possession of property taken from a place recently burglarized, that fact may be considered by the jury, along with all other circumstances, as tending to show that the one in possession committed the burglary."

The testimony in this case, which was a question for the jury to determine as to the weight of the testimony and credibility of the witnesses, showed that this defendant, Buddy Husted, and Elon Denny were around the city of Enid together; that on the morning after the robbery was committed that night, they showed up in Herb's restaurant; and the defendant offered to sell Herb six sacks of bran. Herb did not want to buy the bran, but told him that he thought Mrs. McOscar would buy it; that Mrs. McOscar came in, and Herb told her that the defendant had some bran that he wanted to sell. She went out, and found the price was $1.25 per hundred, and came back, and agreed with the defendant, and bought the bran at $1 per hundred. Mrs. McOscar says that she bought the bran because of the fact that she knew Buddy Husted, and knew that they had been working at the elevator, and that the other boys had been working for Mr. Garber.

Later on in the day Buddy Husted, Elon Denny, and the defendant, in one of the cars of the family of the defendant, delivered the bran to Mrs. McOscar out at her farm. Buddy Husted and Elon Denny, as shown by the record, sold to Mrs. Leisure a part of the stuff that had been taken from the elevator, and left a part of it at her place, telling her that they wanted to sell a part of it, because they wanted to go to Colorado the next day.

Every circumstance and action of the defendant, from the early morning after the burglary was committed that night up to the time of the conviction, connects him so closely with the burglary, and sufficiently by acts and circumstances corroborates the accomplice.

It is needless to extend this opinion further. The evidence of the other witnesses, the actions of the defendant,

and when appearing early the next morning with the parties named in connection with the burglary, clearly show him guilty; clearly show that the jury was warranted in convicting him.

The judgment of the trial court is affirmed.

DOYLE, P. J., and BAREFOOT, J., concur.