## VERNON CRABB v. STATE.

No. A-10839. April 28, 1948.

(192 P. 2d 1018.)

324

Jerome Sullivan, of Duncan, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Vernon Crabb, was charged by information filed in the district court of Stephens county with committing the crime of burglary in the second degree while acting jointly with one Burton Taylor. Burton Taylor entered his plea of guilty to said charge and at the time of the trial was serving a term of imprisonment in the State Penitentiary pursuant to the judgment and sentence pronounced against him. The first trial of the defendant, Crabb, resulted in a hung jury.

At the second trial, a verdict of guilt was returned fixing the minimum punishment of two years imprisonment in the penitentiary. Judgment and sentence was pronounced pursuant to the verdict of the jury, and defendant has appealed.

The proof of the state showed that on Friday night, February 22, 1946, a filling station owned by one Fred Hickman in the city of Duncan was broken into and a radio, an electric battery, three jackets, and approximately $15 in money were taken. On Saturday afternoon, February 23, 1946, which was the day following the burglary, the codefendant, Taylor, entered a pawnshop to attempt to pawn a guitar and radio. The owner of the pawnshop bought the guitar and testified that when he asked Taylor to sign a receipt that he signed a name which was unintelligible which made him suspicious that it was a fictitious name; that he walked out to the car which Taylor was driving and took the car number and a short while later reported the incident to the police; that he did not see the defendant, Crabb, with Taylor at anytime; but that he did see Crabb walking on the sidewalk in the front of his store by himself.

The police officers checked the tag number which was furnished to them by Wilson and learned that it belonged to the defendant's mother. Shortly thereafter, Burton Taylor was arrested. At the time of his arrest he was wearing one of the leather jackets which had been taken in the burglary of the filling station. About fifteen minutes later the defendant, Crabb, was arrested. He did not have any of the stolen property on his person at the time of his arrest, but in the Buick automobile which belonged to the defendant's mother, two of the jackets taken in the burglary were found.

The following Sunday morning, the defendant, Crabb, and Taylor were taken to the police station to be fingerprinted and photographed. Over the strenuous objection of counsel for the defendant the officer who took the fingerprints was allowed to detail a conversation he had with Taylor while the defendant, Crabb, was sitting about twelve feet away, in which statement the said Taylor related that he and Crabb had gone to Ardmore together and that while driving together in the automobile they had picked up a Negro and bought the clothes from him, and Taylor further stated that the radio, which was later identified as stolen property, belonged to him and Crabb. The officer further testified that the defendant, Crabb, did not talk and made no statement at all to him. In this connection the record discloses the following:

"Q. Did you have any conversation there with them? A. Yes, sir, I did. Q. Tell the court what the conversation was. By Mr. Sullivan: Just a minute, limit your question to what the conversation was with this defendant. By Mr. Marshall: And Burton Taylor, if they were together. By Mr. Sullivan: Any conversation with Burton Taylor, we claim is incompetent and irrelevant. If you arrest me with some other person or some other man and he says something about me, it is not binding on me. By Mr. Marshall: It is, unless you explain it at the time. By the Court: If he made any declarations that incriminated this man, he could speak up if he wanted to. By Mr. Sullivan: Note our exceptions to the remarks of the county attorney and the court with reference to any duty of this defendant to speak up and say anything. By the Court: Objection overruled. By Mr. Sullivan: Exceptions. Q. (By Mr. Marshall) All right, just what did you ask them about? Did you ask them about this property? By Mr. Sullivan: Tell him to ask who, Your Honor. By the Court: Let him state who he asked. Q. Did you talk to Crabb here? A. I talked to Crabb and Taylor both. They were both in the room. Q. Both in the room to-

gether? A. Yes, sir. Q. What did Crabb say? A. Crabb didn't talk. Q. What did Taylor say in his presence? By Mr. Sullivan: We object to what Taylor said in his presence as not binding on this defendant and prejudicial to his rights, and for the further reason there was no duty on the part of this defendant to deny, confirm, or make any comment of any kind upon any statement made by Burton Taylor. By the Court: Overruled. By Mr. Sullivan: Exceptions. A. Taylor told the story that they had bought, I presume these were the clothes, they had some clothes and a guitar, and I believe they said they bought the clothes—they had picked up a Negro en route to Ardmore, and bought the clothes from this Negro, and they claimed the radio. By Mr. Sullivan: You say 'they', who said it? A. I mean in the presence of Crabb. Crabb didn't make any statement. Crabb was sitting in the door of the room where he could have heard and did hear Taylor, because we were all present and Taylor did the talking. Taylor claimed that the clothes were bought from a Negro and the radio didn't come out of our County. He inferred that it came from Lawton. Q. At that time, did they tell you where they lived? By Mr. Sullivan: This defendant now moves the court to strike that testimony from the consideration of this jury as not binding on this defendant and prejudicial to his rights. By the Court: Overruled. By Mr. Sullivan: Exceptions. Q. Was anything said about where they lived? A. They didn't deny—that is, no, I am speaking of Taylor—he did the talking and Crabb was sitting in the door of the room, in a small office, and we were just talking in ordinary tones of conversation and there was nothing to keep Crabb from hearing the conversation—now whether he heard it, I couldn't positively say. Q. Any how, you questioned them both and Crabb kept quiet? A. Yes, sir. Q. Where did they say they came from? A. Lawton. They said their home was at Lawton. Q. How did they say they traveled over there? By Mr. Sullivan: We object to the form of the question, when he says 'how did they say.' By the Court: Let him answer. By Mr. Sullivan: Exceptions. A. They claimed they were trav-

eling—well, they were caught and didn't deny it, traveling in this automobile, as I remember, sir."

This court has often had occasion to discuss the law applicable to evidence such as that in question. In the recent case of Walker v. State, 80 Okla. Cr. 21, 156 P. 2d 143, it was held:

"Where a party charged with the commission of a crime is under arrest, and a third party in his presence makes a statement to the officers which tends to connect the accused with the commission of the crime, and the accused remains silent, such statement, and the fact that the accused remained silent, is not admissible in evidence against him, for the Constitution clothes the accused with the right of silence, and it would be absurd to say in one breath he has the right of silence, and in the next to hold that he could be forced to testify against himself by the very act of exercising his right."

In the case of Roy v. State, 77 Okla. Cr. 405, 142 P. 2d 139, the law pertaining to the admissibility of this type of evidence is stated in the syllabus as follows:

"The declarations of a coconspirator or accomplice are receivable against his fellow conspirators when they accompany and explain acts done in pursuance of a concerted criminal purpose, if made during the pendency of the common criminal enterprise; if made at a subsequent period and merely narrative of past occurrences, they must be rejected.

"Where a party charged with the commission of a crime is under arrest, and a third party, in his presence, makes a statement to the officers, which tends to connect the accused with the commission of the crime, and the accused remains silent or denies such statement, it is error for the trial court to admit the testimony of the officers concerning such statement."

In the body of the opinion it is stated:

"In the early case of Vaughan v. State, 7 Okla. Cr. 685, 127 P. 264, 42 L. R. A., N. S., 889, this court gave an extended discussion of the admissibility of this character of testimony. The law of that case is stated in the syllabus as follows:

" 'It is error in the trial of a criminal case for the court to admit testimony as to declarations between an officer who had accused under arrest and the State's witnesses, or other persons, in the presence of the accused, tending to connect him with the offense charged, and that the accused remained silent as to such conversation; and, when a conviction results with such testimony before the jury, a new trial should be granted.'

"This decision has been followed in many other cases since that date. See Ellis v. State, 8 Okla. Cr. 522, 128 P. 1095, 43 L. R. A., N. S., 811; Towery v. State, 13 Okla. Cr. 216, 163 P. 331, L. R. A. 1917D, 491; Ellington v. State, 24 Okla. Cr. 67, 215 P. 964; Patton v. State, 29 Okla. Cr. 66, 232 P. 454.

"In Towery v. State, supra, it is stated:

" 'Where a party charged with the commission of a crime is under arrest, and a third party in his presence makes a statement to the officers, which tends to connect the accused with the commission of the crime, and the accused remains silent, such statement, and the fact that the accused remained silent is not admissible in evidence against him, for the Constitution clothes the accused with the right of silence, and it would be absurd to say in one breath he has the right of silence, and in the next to hold that he could be forced to testify against himself, by the very act of exercising this right.'

"In Patton v. State, supra, it is held:

" 'Declarations of a defendant, made after the offense was committed, in the presence of a codefendant, are admissible against himself, but inadmissible against the other defendant.

" 'A defendant in custody is not called upon to contradict statements prejudicial to him, made in his presence, and, though they are not contradicted, they are not admissible in evidence.'

"In the body of the opinion, it is stated:

" 'The declarations of a coconspirator or accomplice are receivable against his fellows when they accompany and explain acts done in pursuance of a concerted criminal purpose, if made during the pendency of the common criminal enterprise; if made at a subsequent period and merely narrative of past occurrences, they must be rejected. Bohannan v. State, 24 Okla. Cr. 103, 215 P. 1078.' "

It is clearly apparent from the above authorities that the admission of this evidence constituted reversible error.

The information charged the defendant with committing the crime of burglary in the second degree after a prior conviction of a felony. At the close of the state's case, the county attorney in the presence of the jury made the following statement which is assigned as error:

"By Mr. Marshall: Comes now the state and asks the court to submit the question of the guilt of the defendant on the charge of burglary in the second degree, and the state waives the right to present any evidence or argument on the question of the defendant being a second offender or an habitual violator under the law."

Upon the retrial of this case, if the county attorney does not wish to introduce proof as to the prior conviction of the defendant, he should delete that allegation from the information and not refer to it in his opening statement. The law is strict in guaranteeing to an accused a fair trial and in seeing that no unfair advantage is taken of him. To make the allegation of a former conviction of a felony in the information which is read

to the jury as a part of the opening statement of the case by the county attorney where there is no intention to offer proof of this fact is clearly prejudicial to the rights of the defendant, as the statement of the county attorney that the accused had suffered a prior conviction of the felony will be accepted as true by some of the jurors, even though no proof of that fact is offered, and even though the court eliminates that issue from the consideration of the jury in his instructions.

Complaint is made that the evidence is insufficient to sustain the verdict. This is not one of those cases where we feel justified in saying that there is abundant evidence to sustain the conviction. We have hereinabove related some of the important facts pertaining to the guilt of the accused. While the evidence of guilt is not strong, there is evidence of the possession by the defendant in the automobile of recently stolen property, and this possession was unexplained. No evidence was offered by the defendant at the trial and at the time of his arrest he neither made nor attempted to make any explanation of his possession of the stolen property. We have held in cases similar to that shown by this record that the evidence was sufficient to go to the jury for their determination as to the guilt of the accused. James v. State, 66 Okla. Cr. 462, 92 P. 2d 973; Robinson v. State, 67 Okla. Cr. 8, 92 P. 2d 1082; Hart v. State, 57 Okla. Cr. 372, 48 P. 2d 337; Hopper v. State, 81 Okla. Cr. 158, 160 P. 2d 942, 944.

In Hopper v. State, supra, this court stated:

" 'The presumption arising from the possession of recently stolen property is one of fact and not of law. It is a circumstance for the jury to consider and weigh along with all the other evidence in the case. If the possession is unexplained, or if it is unsatisfactorily ex-

plained, or the explanation, even though plausible, is not believed, the jury will accord it such weight as they deem right and proper. They are the sole judge as to its weight, and when such fact with the other facts and circumstances in evidence, when given due weight, satisfy the jury beyond a reasonable doubt of defendant's guilt, it is sufficient to sustain the verdict.' "

There are other assignments of error, but with the exception of those hereinabove discussed, the others appear to be without substantial merit, except the assignment of error directed to the alleged improper remarks of the county attorney in his losing argument to the jury. It is unnecessary to discuss this assignment of error as the county attorney probably realized when he made the statement that the argument was improper and the trial court stated at that time "it is probably reversible error". Upon a retrial of this case, the county attorney should be careful not to make any statements in his argument which might appear to be a comment upon the fact that the defendant did not testify which argument is expressly forbidden by statute. Tit. 22 O. S. 1941 § 701.

For the reasons hereinabove stated, the judgment and sentence of the district court of Stephens county is reversed and the cause remanded for a new trial.

BAREFOOT, P. J., and BRETT, J., concur.