THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ISMAEL ÁLVAREZ TRINIDAD ET AL., Defendants and Appellants.

No. 16758. Decided June 5, 1962.

*Angel Viera Martínez* for appellants. *J. B. Fernández Badillo, Solicitor General, Arturo Estrella, Acting Solicitor General, Genoveva R. Carrera,* and *Rodolfo Cruz Contreras, Assistant Solicitors General,* for The People.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

Of the errors assigned by the defendants–appellants we turn to consider only those relating to the admission by silence. The evidence heard before the jury in the course of the testimony of detective Manuel Castellano Rivera was as follows:

*District Attorney:* "In the presence of Raúl Álvarez Trinidad, the defendant in this case, and in the presence of Benjamín Trinidad Aponte, the question is: whether Carmelo Carmona said to Raúl Álvarez Trinidad, the defendant in this case, whether he said anything, whether he said anything in the presence of the defendant."

.         .         .         .         .         .

*Witness:* "Carmelo Carmona accused Raúl Álvarez of being the person who was driving the automobile when it ran over the body of Jesús Cardona."

*District Attorney:* "When Carmelo Carmona said that in your presence, of this district attorney, and in the presence of Raúl Álvarez himself, the defendant in this case, of Quinco, what did Quinco answer, if he answered anything?"

*Witness:* "He remained silent." (Tr. 185.)

. . . . . .

*District Attorney:* "Witness, do you know whether Raúl Álvarez Trinidad, Quinco, known as Quinco, at any time within the presence of Carmelo Carmona and in view of the accusation, or what you have testified here that Carmelo Carmona said to him, to Raúl Álvarez Trinidad, during the time he was in the office of the district attorney, he denied at any time the facts which Carmelo Carmona imputed to him?"

*Witness:* "No, sir, he remained silent." (Tr. 188.)

Upon cross-examination by the defense attorney on this point, witness Castellano testified:

*Defense:* "Did Raúl Álvarez Trinidad at any time admit the facts imputed?"

*Witness:* "No, sir."

*Defense:* "Did he always deny them?"

*Witness:* "No, sir." (Tr. 204.)

. . . . . . . .

*Witness:* "He always admitted that he had been in Dorado, that he had been to Cerro Gordo beach, and that he had left Jesús Cardona in the place where he was found, but safe and sound." (Tr. 204-05.)

. . . . . . . .

*Defense:* "So, then, you say that he explained everything that had happened, but that he never admitted that he had committed these acts which Carmona claims? Is it true that he never admitted them?"

*Witness:* "Never."

*Defense:* "And he said that by word of mouth, not by silence, by word of mouth, did he say it with his mouth?"

. . . . . . . .

*Defense:* What he said, the places he had been to."

*Witness:* "Yes, sir, he said that." (Tr. 206.)

Referring to the admission by silence, the judge who presided at the trial charged the jury as follows: "Normally

the party himself makes an admission, but other times it may be made by silence, that is, that it is not the party who speaks but who adopts it, incorporates that feeling, statements of another party; he adopts that conduct. I will explain myself: a murder is being investigated, it is not known who killed the victim, I am called to investigate and I am at the office of the district attorney, I do not speak; attorney Franco Santiago then arrives and says to the district attorney: 'The death you are investigating, it was Idrach who killed him with one shot; Idrach killed him.' I am hearing that, I say nothing; the law says that that is an admission by silence. The law presumes that I should jump up and say: 'That is not true, I did not do it.' But if I remain silent, that is an admission by silence."

■ The law applicable to the case is § 11 of Art. II of the Constitution of the Commonwealth of Puerto Rico which provides: "No person shall be compelled in any criminal case to be a witness against himself *and the failure of the accused to testify may be neither taken into consideration nor commented upon against him.*" (Italics ours.)

Prior to the adoption of our constitutional rule there governed in Puerto Rico the provision of § 2 of the Organic Act of 1917, in the sense that: "No person . . . shall be compelled in any criminal case to be a witness against himself," and § 7 of our Code of Criminal Procedure in the sense that: "No person can be compelled, in a criminal action, to be a witness against himself," which provisions are similar to the constitutional guarantee of Art. V of the Constitution of the United States of America in the sense that: "No person . . . shall be compelled in any criminal case to be a witness against himself," which is the pattern of the private constitutions and statutes of the states of the Union.

In view of the latter federal provision, the American case law developed the pragmatic theory that the silence of the defendant should not be taken into consideration by the jury

nor commented upon by the district attorney, and made it the duty of the presiding judge to condemn the conduct of the district attorney and to give forthwith a specific instruction to the jury on its duty not to take into consideration any comment on the defendant's silence. Our local rule was inspired on this pragmatic theory. *People* v. *Díaz*, 69 P.R.R. 577, 584 (1949); *People* v. *Estrada*, 51 P.R.R. 791, 795 (1937).

■ Regarding the defendant's silence in the course of the investigation, which is the time when the so-called admissions by silence are produced, the tacit admissions or the exceptions to the hearsay evidence, five requirements were established to make admissible the so-called tacit admissions—such as the inculpatory statements not contradicted nor denied by the defendant in the course of the investigation: (1) That the statement be an extrajudicial statement, that is, outside the ordinary criminal prosecution—of incriminatory or accusatory nature; (2) that it be one to which an innocent man in the situation of the defendant would reply; (3) that the inculpatory statement be made within the presence and the hearing of the defendant; (4) that he understand the meaning of the statement; and (5) that he had the opportunity to deny or to reply to the statement: 2 WHARTON, Criminal Evidence 162, § 409 (Lawyers Co-operative Publishing Company, 1955).

This pragmatic rule, contrary to the established rule, did not satisfy the critical exigencies of the jurists. In the first place, the previous inquisitorial experiences of the medieval methods in criminal investigations were too alive in the conscience; in the second place, the development of the psychological sciences showed the enrarefaction of the conduct, the mental torpidness, the emotional panic experienced by a person under arrest; in the third place, the differentiation of attitudes between an occasional and a habitual delinquent,

with their different degrees of astuteness, moral tenaciousness, etc., could not be established within a homogeneous rule.

■■ The most progressive decisions started by extending to the process of the investigation the same constitutional protection against self-incrimination which covers the criminal prosecution: *Helton* v. *United States*, 221 F.2d 338, 341–42 (Wright, 1955); *Crabb* v. *State*, 192 P.2d 1018, 1021–22 (Jones, 1948); *McGrew* v. *State*, 293 P.2d 381, 385–86 (Jones, 1956); the old Massachusetts rule in the sense that the mere fact that a person is under arrest and charged with an offense rendered inadmissible any incriminatory statement made in his presence, even though the person under arrest did not controvert it, has been adopted in other jurisdictions. 115 A.L.R. 1517–19 (1938); 29 N.Y.U.L. Rev. 1271–72 (1954); the protection of the suspect, victim of the suffering, of the fear to be misinterpreted, of his general belief that "anything may incriminate him," becomes every day a stronger rule: 77 A.L.R.2d 463–66.

It must be assumed that when our Constituent Convention meets it has knowledge of our prior constitutional and statutory provisions of 1917 and of 1902 as well as of our decisions of 1937 and 1949, in which latter decisions we adopted the pragmatic rule of immediate recrimination and special instruction. The emphasis stressed in § 11 of Art. II of our Constitution in the sense that "the failure of the accused to testify may be neither taken into consideration nor commented upon against him," seems to sum up the modern tendency to avoid any inquisitorial risk in our process of criminal investigation and every admission by silence.

■ This being so, we must conclude that according to § 11 of Art. II of the Constitution of the Commonwealth of Puerto Rico, as the same was adopted, the silence of a person under arrest when confronted with the accusation of a coparticipant, accomplice, or private individual in the course of

the criminal investigation or in the course of the criminal prosecution should not be taken into consideration nor commented upon against him, whether it is considered as an admission by silence, tacit admission, or exception to the hearsay evidence as forming part of our constitutional guarantee against self-incrimination, and it is the duty of our courts not to admit such evidence and of our district attorneys to abstain completely, during the prosecution, from making any comment which may give rise to an inference on a possible admission by silence.

Having examined the instruction given by the judge who presided at the trial, both under the prior pragmatic rule with its five assumptions of admissibility and under the new constitutional rule, such instruction was erroneous and prejudicial not only to the defendant mentioned in the inculpatory statement, but also to the other defendants, since all of them were jointly tried and verdict was brought against all of them in the same degree. Since the case will be retried, we abstain from commenting the remaining errors assigned.

The judgment rendered will be reversed and a new trial is ordered.